## ATLANTA STANDARD TELEPHONE CO. *v.* PORTER.

Where a contract between a telephone company and one of its subscribers provided that the latter should pay to the former a specified sum as an annual rental for exchange service charges, payable in quarterly installments in advance, and that if the service should be interrupted otherwise than by negligence or willful interference of the subscriber, a rebate at the rate specified for the " rental " should be made for the time such interruption continued after reasonable notice in writing to the company, but no other liability should in any case attach to the company, the subscriber could not escape liability for the stipulated " rental " because of bad, improper, or useless service, without first giving to the company notice in writing of an interruption of service. Hence, in a suit by the company against the subscriber, for an amount claimed to be due the plaintiff for telephone service, upon the defendant's admitting that he " never gave the company any written notice of interruption of service before this suit was filed," testimony offered by him tending to show bad, improper, or useless service was inadmissible, when proper objection was made thereto.

Submitted January 15, — Decided February 9, 1903.

Petition for certiorari. Before Judge Lumpkin. Fulton superior court. March 3, 1902.

*Felder & Rountree* and *Fuller & Nealon,* for plaintiff.
*R. B. Blackburn,* for defendant.

FISH, J. The Atlanta Standard Telephone Company sued T. H. Porter, in a justice's court in Fulton county, upon an account, for $16.80, for telephone service. In the justice's court the case was appealed to a jury, and there was a verdict for the defendant. The plaintiff presented a petition for certiorari to the judge of the superior court of the Atlanta circuit, who refused to sanction the same; whereupon the plaintiff sued out a bill of exceptions, alleging error in this ruling of the judge. From the evidence for the defendant, as set forth in the petition for certiorari, it appears that the defense set up was failure of consideration. It also appears that the plaintiff introduced a witness who swore that the account sued on was just, due, and unpaid ; and a written contract between the parties, wherein the defendant agreed to pay to the plaintiff, " as an annual rental for exchange service charges, the sum of $36.00, payable in quarterly installments in advance for a period of five years." This contract contained the following provision: " If the service is interrupted otherwise than by negligence or willful interference of the subscriber, a rebate at the rate hereinbefore specified shall be made for the time such interruption continues.

after reasonable notice in writing to the company, but no other liability shall in any case attach to the company." The decision of the case turns upon the proper construction of this provision. The defendant, who was introduced by the plaintiff, testified that "the telephone was put in and remained in until this suit was filed," and that he "never gave the company any written notice of interruption of service before this suit was filed." The plaintiff objected to certain testimony of the defendant himself, and of witnesses introduced by him, tending to show — to use the language of our learned brother of the superior court — "bad or improper or useless service," "upon the ground that it was irrelevant, the defendant having testified that he had not given the plaintiff the written notice of interruption of service required by the contract." This objection, which was repeatedly made as the evidence was offered, was in each instance overruled by the magistrate, and in the petition for certiorari, error was assigned upon each of these rulings. A further assignment of error was, "that the verdict was contrary to the law and the evidence and without evidence to support it." The order of the judge, refusing to sanction the petition for certiorari, was as follows: "I can not sanction this writ. The evidence authorized the verdict. The objections to evidence all hinged on the fact that no written notice had been given. The only requirement of notice in the contract is in order to get a rebate if the service is 'interrupted, . . for the time such interruption continues.' This is entirely different from bad, improper, or useless service."

We think his honor erred in the construction which he placed upon the contract. It will be seen that, under the contract, the defendant was bound to pay to the plaintiff, for telephone service to be furnished to him by the latter, $36 annually, in quarterly installments, payable in advance of service rendered by the company, and, if the service should be "interrupted otherwise than by the negligence or willful interference" of the defendant, the plaintiff was bound to "rebate," or refund, the "rental" for the time during which such interruption continued, after written notice thereof to the telephone company, but "*no other liability should in any case attach to the company.*" So, if the contract were carried out on the part of the defendant, the "rental" for the telephone service which the company contracted to furnish him would, at the beginning of each quarter, be paid in advance of the rendition of such service, subject

to be proportionately rebated, or refunded, for the time during which the service should, without fault of the defendant, be interrupted, after written notice thereof to the company; and as, by the terms of the contract, the company was, upon the happening of the specified conditions, bound to "rebate" the "rental," and only bound to "rebate" it upon those conditions, the defendant could not escape liability for the "rental," without showing interruption of service, continuing after he had notified the company, in writing, of the same. Under this contract, non-liability of the defendant for the "rental," and liability of the plaintiff to "rebate" the same, amount to the same thing, and, as "no other liability should in any case attach to the company," except the liability, under the specified conditions, to "rebate" the rental, it follows that, except under such conditions, the defendant would be liable for the "rental" which he contracted to pay. Hence, in order to give the provision of the contract in reference to an interruption of service a reasonable interpretation, "interrupted" service must be construed to mean, not only a total cessation of a service once begun, but any service falling short of service reasonably suited to the purpose intended; for otherwise the subscriber could not claim the right to have money which he had paid in advance for telephone service refunded upon the ground that the service furnished was so unsatisfactory and defective as to be practically useless, but could only claim such a right when there was a total cessation of service. An interruption of service, within the meaning of this contract, is an interruption of the kind of service contracted for, that is, of a service reasonably adapted to the purpose intended, and such a service could be "interrupted" by being displaced by a "bad, defective, or useless service." We think the provision of the contract in reference to "interrupted" service was intended both to secure to the subscriber a reasonably efficient service on the part of the company, and to prevent, on his part, a claim of non-liability for the specified "rental," based upon bad and defective service, or a total cessation of service, unless the company was first afforded an opportunity to remedy whatever defects there might be in the service. A portion of the testimony objected to by the plaintiff and admitted by the court was perfectly consistent with an "interrupted" service, even if, under this contract, interruption of service should be construed to mean only a total cessation of a service once begun, and all of it tended to show an "interrupted"

service within the meaning of that term as applied to the contract. The defendant having testified that he never gave any written notice of interruption of service to the plaintiff, and the testimony under consideration, when offered, having been objected to upon this ground, it was error to admit it; and the petition for certiorari, assigning error upon such ruling, should have been sanctioned by the judge of the superior court.

*Judgment reversed.　By five Justices.*