**AMERICAN TELEPHONE AND TELE-GRAPH COMPANY, a New York corporation, Plaintiff,**

v.

**FLORIDA–TEXAS FREIGHT, INC., an Alabama corporation, Defendant.**

**No. 72–1653–Civ.**

United States District Court,
S. D. Florida.
April 17, 1973.

Sherryll Martens Dunaj, of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, Fla., for plaintiff.

Richard P. Kenney, Miami, Fla., for defendant.

FULTON, Chief Judge.

This cause was considered upon cross motions for summary judgment, and the Court has heard oral argument of counsel. The parties have stipulated, and the record clearly demonstrates, that there are no issues of material fact remaining for trial; thus, this cause is proper for summary judgment. Plaintiff, a common carrier engaged in interstate communication by wire, has brought suit against the defendant, an interstate freight forwarder, upon an account stated for private line, network telephone services provided to defendant in April, 1972. This Court has jurisdiction of this cause pursuant to 28 U.S.C. § 1337 in conjunction with 47 U.S.C. § 203.

## FACTS

The parties have stipulated the following facts. Plaintiff provided defendant with an interstate private line telephone network consisting of twelve stations with one such station located in Miami, Florida. At the defendant's request, plaintiff began work in April, 1972, to convert defendant's telephone network service to allow reception of private line calls through the same telephone unit as defendant's other telephone communications. During the month of April defendant's Miami station experienced several "outages" or interruptions in service, the period of said interruptions totaling twelve days. Early in April plaintiff mailed a monthly statement to defendant in the amount of $4,124.45 for services to be rendered during the month of April. Thereafter, defendant

contacted plaintiff requesting credit for the April service interruptions, and on May 15, 1972, plaintiff informed defendant that the total estimated credits, computed in accord with F.C.C. Tariff No. 260, amounted to $126.11. Defendant claimed a credit allowance of $2,000 and remitted as payment for the April statement a check in the amount of $2,124.45.

This action was then instituted wherein plaintiff seeks to recover $2,000 from defendant as unpaid charges for the April services, less credit for service interruptions in the amount now calculated to be $137.52. In its answer, defendant raises as an affirmative defense credit for interruptions in service as to all twelve stations served on the private line network, as opposed to plaintiff's credit allowance for interruptions at the Miami station only. Defendant has also counterclaimed against plaintiff for damages in excess of $5,000 for plaintiff's failure to adequately provide uninterrupted private line service to defendant, thereby causing defendant to expend money for private long distance calls to its installations.

The parties have agreed pursuant to the pre-trial stipulation that F.C.C. Tariff No. 260 controls the charges and credits to be allowed by plaintiff for interstate private line service and that the plaintiff must comply with the provisions of said tariff. The parties have further stipulated that Section 2.4.8 of Tariff No. 260 specifically provides for the manner of calculation of credit allowances for service interruptions.

Defendant's counterclaim for $5,000 damages has been omitted from the issues of law remaining for determination by the Court as set forth in the pre-trial stipulation. Thus, defendant relies solely upon the affirmative defense of credit which is to be allowed against plaintiff's claim.

## TARIFF NO. 260

Section 203(a) of Title 47, United States Code, requires every common carrier to file with the F.C.C. schedules showing all charges for itself and its connecting carriers, including the classifications, practices and regulations affecting such charges. Upon the filing of the schedules, Section 203(c) provides in part as follows:

. . . [N]o carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication . . . than the charges specified in the schedule then in effect, or (2) refund or remit by any means or device any portion of the charges so specified . . . except as specified in such schedule.

■■ It is clear that a tariff, required by law to be filed, constitutes the law and is not merely a contract. Carter v. American Telephone & Telegraph Co., 365 F.2d 486, 496 (5th Cir. 1966) cert. denied, 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); United States v. Associated Air Transport, Inc., 275 F.2d 827, 833 (5th Cir. 1960). It is also clear that tariffs validly filed in accordance with 47 U.S.C. § 203 operate to conclusively and exclusively control the rights and liabilities between the parties. Schaafs v. Western Union Telegraph Co., 215 F.Supp. 419 (E.D.Wis.1963); Komatz Construction Inc. v. Western Union Telegraph Co., 186 N.W.2d 691 (Minn.1971), cert. denied, 404 U.S. 856, 92 S.Ct. 102, 30 L.Ed.2d 98 (1971); see, Western Union Telegraph Co. v. Esteve Brothers & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921).

The Private Line Service Regulations of Tariff No. 260 filed with the F.C.C. which are pertinent to this lawsuit provide in part as follows:

Paragraph 2.1 *Undertaking of the Telephone Company*; Section 2.1.3(a) *Liability*:

The liability of the Telephone Company for damages arising out of . . . interruptions . . . shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of serv-

ice during which such . . . interruption . . . in transmission occurs.

Paragraph 2.4 *Payment Arrangements and Credit Allowances*; Section 2.4.8(a) *Allowance for Interruptions*:

. . . For the purpose of determining the amount of allowance, every month is considered to have 30 days and only those stations on the interrupted portions of a service shall be considered in determining the number of stations affected. . . . .

Paragraph 2.4; Section 2.48(A)(6)(b)(i) *Credit Allowances for Interruptions:*

An interruption credit allowance is determined by (1) calculating the Average Station Value for one full day [Average Station Value ÷ by 30 (days)] (2) multiplying the result of (1) by the "proportionate part of day credited" as specified in (ii) below, then (3) multiplying the result of (2) by the number of stations affected.

Section 2.1.3(a) limits the liability of the plaintiff for damages to the amount charged to defendant attributable to the interrupted service; thus, defendant is not entitled to recover on its counterclaim as a matter of law. The sole remaining question is the amount of credit allowable to defendant under the tariff.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

In support of its motion for summary judgment, plaintiff has filed a certified copy of Tariff No. 260 and an affidavit of R. J. Fuller, the former sales manager of plaintiff responsible for billing the accounts of defendant. The affidavit sets forth in detail the computation of the credit allowed to defendant for the April service interruptions under Tariff No. 260, said credit totaling $137.52 for a twelve-day period of service interruptions at the Miami station. The formula used by plaintiff in computing credit as provided by section 2.4.8(A)(6)(b)(i) of the tariff is as follows:

| Interruption Credit Allowance | = | $\dfrac{\text{Average Station Value}}{\text{30 days}}$ | x | Proportion of Day Credited | x | Number of Stations Affected |
|---|---|---|---|---|---|---|
| Credit | = | $11.46 | x | 12 | x | 1 |
| | | Total Credit = $137.52 | | | | |

The parties have agreed that the figures used to compute the credit allowance are correct with regard to the average station value and proportion of day credited. The point of disagreement between the parties is whether, in computing the number of stations affected by the interruptions, only one station, the defendant's Miami station, is to be considered or whether all twelve stations on defendant's service must be included.

Defendant has moved for summary judgment contending that, as a matter of law, the interrupted service at the Miami station, defendant's home office and the "hub" of its operations, rendered the remaining eleven stations on

its private line service unusable, and thus all twelve stations were "affected" and must be included in the formula for computing credit. Defendant reasons that, since the Miami station is the nerve center of its operations, all twelve stations were affected by the interruption at the Miami station "just as surely as though each of the twelve stations suffered mechanical or technical breakdowns."

In support of its contention, defendant cites to Mountain States Telephone and Telegraph v. Hinchcliffe, 204 F.2d 381 (10th Cir. 1953), a suit to recover damages for negligent failure to provide proper telephone service to plaintiff's business. The Court held that the evi-

dence was sufficient to support recovery of lost profits as well as damages for inconvenience and business interference where the telephone company had negligently failed to provide adequate services. The *Hinchcliffe* tort action is clearly inapplicable to this cause since the rights and liabilities of the parties in this lawsuit are governed exclusively by Tariff No. 260. Defendant relies upon Atlanta Standard Telephone Co. v. Porter, 117 Ga. 124, 43 S.E. 441 (1903), to define an "interruption" of telephone services as not only total cessation of the service but any service falling short of service reasonably suited to the purpose intended. *Porter* is likewise inapplicable to this lawsuit because of the controlling provisions of Tariff No. 260.

In determining the number of stations "affected" by the service interruptions, this Court cannot adopt an interpretation of that provision contrary to that which is clearly set forth in the tariff itself. Tariff No. 260 provides the method for determining the number of stations "affected," and this Court is bound to follow its provisions, irrespective of the defendant's seemingly more equitable logic. The question of law for determination by this Court is whether, in accord with the provisions of F.C.C. Tariff No. 260, service interruption at only the Miami station constitutes service interruption at only one station for credit purposes or constitutes service interruption as to all twelve stations.

The formula set forth in Section 2.4.8(A)(6)(b)(i) provides that the number of stations affected shall be used in allowing credit for interruptions. Moreover, the method for determining the number of stations "affected" is clearly set forth in Section 2.4.8(A) of the tariff as follows:

. . . [o]nly those stations on the interrupted portions of a service shall be considered in determining the number of stations affected.

The above provision, in defining what stations are "affected," is controlling and dispositive of the issue in this lawsuit. This section does not permit credit allowances for the entire service when one or more but less than all of the stations on the service experience interruptions, nor does it allow for extra credit allowances when the station which incurs interruptions happens to be the most important station on the service from the viewpoint of the subscriber.

Section 2.4.8(A) unambiguously limits the credit allowance to the station or stations *on* the service which in fact experience interruptions. It would be anomalous to define the term "affected" stations as including the entire service when the tariff provides that *only* the stations incurring interruptions *on* the service are to be considered "affected." Section 203(c) of Title 47, United States Code, permits no deviations from the schedules filed with the F.C.C., and thus this Court cannot create a credit exception contrary to the clear provisions of the tariff.

## CONCLUSION

Section 2.4.8(A)(6)(b)(i) of Tariff No. 260 providing for credit allowances according to the number of stations affected is governed by Section 2.4.8(A) which defines an "affected" station as a station on the service which incurs interruption. Since only defendant's Miami station experienced interruptions in service, and not the remaining eleven stations, the amount of the credit allowance must be computed using only one station as being "affected." In accord with the above cited provisions of Tariff No. 260, plaintiff is entitled to summary judgment as a matter of law in the amount of $2,000 less $137.52 credit allowed to defendant for service interruptions.