**MCI TELECOMMUNICATIONS CORPORATION, Plaintiff,**

v.

**UNITED SHOWCASE, INC., Defendant.**

**Civ. A. No. 3:92–CV–2124–D.**

United States District Court,
N.D. Texas,
Dallas Division.

April 1, 1994.

John C. Meinrath, Sen. Atty., Office of Gen. Counsel, MCI Tel. Corp., Richardson, Tex., for plaintiff.

No appearance for defendant.

FITZWATER, District Judge:

In this action to recover unpaid charges for interstate telecommunications services provided under the terms and conditions of a tariff filed pursuant to the Communications Act of 1934, 47 U.S.C. §§ 151–613 (the "Communications Act"), the court must decide whether the Fifth Circuit's recent opinion in *MCI Tel. Corp. v. Credit Builders of Am., Inc.,* 980 F.2d 1021 (5th Cir.), *vacated,* —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d 676, *prior opinion reinstated,* 2 F.3d 103 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993), deprives it of subject matter jurisdiction. For the reasons set out, the court holds that an earlier Fifth Circuit panel opinion is binding precedent,

and that the court has subject matter jurisdiction.

## I

Plaintiff MCI Telecommunications Corporation ("MCI") sues defendant United Showcase, Inc. ("United") to recover $18,116.50 in charges allegedly due for interstate telecommunications services provided to United. MCI contends this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331[1] and 1337[2] and the Communications Act. MCI sues as a provider of interstate telecommunications services, seeking to recover from defendant United for services rendered from April through August 1992 under the terms and conditions of MCI Tariff F.C.C. No. 1. This tariff is filed and maintained with the Federal Communications Commission ("FCC").

MCI initiated the present case in October 1992. It obtained service of process on defendant United by serving the Secretary of State of the State of Texas. Thereafter, on January 12, 1993 the Fifth Circuit filed its opinion in *MCI*, 980 F.2d 1021. Recognizing the effect of the decision on this lawsuit, MCI moved this court to stay the action, or transfer it to the inactive docket, pending the outcome of its petition for a writ of certiorari to the Supreme Court in the *MCI* case. The court granted this relief.

Thereafter, the Supreme Court granted MCI's petition and vacated the *MCI* panel's judgment. —— U.S. ——, 113 S.Ct. 2925. MCI moved this court to reinstate this case on the active docket, which the court did. Following this, the *MCI* panel reinstated its opinion. 2 F.3d 103. MCI again moved this court to stay the instant case, or transfer it to the inactive docket, pending resolution of its petition for a writ of certiorari. The court granted the motion. Thereafter, the Supreme Court denied MCI's petition. —— U.S. ——, 114 S.Ct. 472.

MCI moves this court to lift the stay currently in place, and to rule that the court has subject matter jurisdiction. Defendant United has neither appeared nor responded to MCI's motion. The matter is ripe for decision.

## II

MCI's request to lift the stay is granted. There is no reason to defer the prosecution of this case, and it is now appropriate to reach the issue of the court's subject matter jurisdiction.

## III

The dispositive question presented by MCI's motion for a ruling on subject matter jurisdiction is whether the *MCI* panel opinion is binding precedent. If it is, MCI concedes the decision unquestionably precludes a finding of subject matter jurisdiction.[3] MCI argues, however, that a prior panel opinion provides there is subject matter jurisdiction and that the earlier ruling is binding in this circuit.

---

1. 28 U.S.C. § 1331:

   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

2. 28 U.S.C. § 1337:

   (a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 11707 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

   (b) Except when express provision therefor is otherwise made in a statute of the United States, where a plaintiff who files the case under section 11707 of title 49, originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of any interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

   (c) The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade under chapter 95 of this title.

3. MCI does not urge that there is diversity jurisdiction pursuant to 28 U.S.C. § 1332. The "matter in controversy," *see* § 1332(a), does not exceed the sum or value of $50,000, exclusive of interest and costs.

A

■ It is axiomatic in the Fifth Circuit that in the case of conflicting panel opinions, the earlier one controls, because one panel of the Fifth Circuit may not overrule another. *In re Dyke*, 943 F.2d 1435, 1442 (5th Cir. 1991). A subsequent panel "may not ignore the decision of a prior panel absent an intervening Supreme Court ruling, legislation, or a decision by this court sitting en banc." *United States v. Gonzalez–Balderas*, 11 F.3d 1218, 1222 (5th Cir.1994). "It has long been established that a legally indistinguishable decision of [the Fifth Circuit] must be followed by . . . district courts unless overruled en banc or by the United States Supreme Court." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n. 8 (5th Cir. 1992).

B

■ MCI urges that *American Tel. & Tel. Co. v. Florida–Texas Freight, Inc.* ("*AT & T*"), 357 F.Supp. 977 (S.D.Fla.), *aff'd per curiam*, 485 F.2d 1390 (5th Cir.1973), represents the law of the circuit and that it holds that a district court has subject matter jurisdiction in cases like the present one.

In *AT & T* a common carrier engaged in interstate communication by wire brought suit on an account for private line network telephone services provided to its customer. 357 F.Supp. at 978. The carrier and customer disputed the amount of a credit for service interruptions that the customer claimed should have been applied to the amount it owed for a particular month of service. *Id.* at 978–79. FCC Tariff No. 260 controlled the charges and credits for interstate private line service, and one provision of the tariff specifically provided for the manner of calculating credit allowances for service interruptions. *Id.* at 979.

The district court held that a tariff that is required by law to be filed constitutes the law and is not merely a contract. *Id.* (citing cases). It noted that tariffs validly filed in accordance with 47 U.S.C. § 203 [4] operate

4. 47 U.S.C. § 203:
(a) Filing; public display
Every common carrier, except connecting carriers, shall, within such reasonable time as the Commission shall designate, file with the Commission and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers for interstate and foreign wire or radio communication between the different points on its own system, and between points on its own system and points on the system of its connecting carriers or points on the system of any other carrier subject to this chapter when a through route has been established, whether such charges are joint or separate, and showing the classifications, practices, and regulations affecting such charges. Such schedules shall contain such other information, and be printed in such form, and be posted and kept open for public inspection in such places, as the Commission may by regulation require, and each such schedule shall give notice of its effective date; and such common carrier shall furnish such schedules to each of its connecting carriers, and such connecting carriers shall keep such schedules open for inspection in such public places as the Commission may require.
(b) Changes in schedule; discretion of Commission to modify requirements
(1) No change shall be made in the charges, classifications, regulations, or practices which have been so filed and published except after one hundred and twenty days notice to the Commission and to the public, which shall be published in such form and contain such information as the Commission may by regulations prescribe.
(2) The Commission may, in its discretion and for good cause shown, modify any requirement made by or under the authority of this section either in particular instances or by general order applicable to special circumstances or conditions except that the Commission may not require the notice period specified in paragraph (1) to be more than one hundred and twenty days.
(c) Overcharges and rebates
No carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in such communication unless schedules have been filed and published in accordance with the provisions of this chapter and with the regulations made thereunder; and no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect, or (2) refund or remit by any means or device any portion of the charges so specified, or (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.
(d) Rejection or refusal
The Commission may reject and refuse to file any schedule entered for filing which does not

conclusively and exclusively to control the rights and liabilities between the parties. *Id.* (citing cases). Insofar as relevant to subject matter jurisdiction, the district court held that it possessed such jurisdiction "pursuant to 28 U.S.C. § 1337 in conjunction with 47 U.S.C. § 203." *Id.* at 978. The Fifth Circuit affirmed the district court "For reasons cogently expressed in the district court opinion." 485 F.2d at 1390.

This court holds that *AT & T* controls and that *MCI* must yield to it. The district court in *AT & T* expressly addressed the issue of subject matter jurisdiction and the Fifth Circuit affirmed for the "reasons cogently expressed in the district court opinion." *Id.* Even if the circuit panel had not spoken with unmistakable clarity regarding the extent of its affirmance—adopting both the result and reasoning of the lower court—the panel was obligated, *sua sponte* if necessary, to examine the district court's subject matter jurisdiction. *Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1297 (5th Cir.1985) (per curiam). The *AT & T* panel did not find such jurisdiction to be lacking.

The *MCI* panel did not address *AT & T* and therefore did not attempt to distinguish it or to hold that it had been abrogated as binding precedent pursuant to intervening legislation, a ruling of the Supreme Court, or the *en banc* Fifth Circuit.[5] The panel instead acknowledged its preference "to take a more cautious approach with respect to the recognition of federal common law," citing two 1981 Supreme Court decisions that had emphasized the narrow reach of federal common law. *See* 980 F.2d at 1022. Although the *MCI* panel did not cite either Supreme Court opinion as being intervening authority that excused it from adhering to the holding of *AT & T,* this court will examine the decisions for that purpose because both opinions post-date *AT & T.*

The court concludes that neither *City of Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), nor *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), abrogates the precedential value of *AT & T* in this circuit. *City of Milwaukee* involved the question whether the Federal Water Pollution Control Act Amendments of 1972 affected a previously-recognized federal common law action to abate a nuisance caused by interstate water pollution. *See* 451 U.S. at 307–308, 101 S.Ct. at 1787. The Court held that Congress supplanted a federal common law remedy through enactment of the amendments. *See id.* at 332, 101 S.Ct. at 1800. *Texas Indus.* addressed whether a federal antitrust defendant had a right of contribution from other participants in an unlawful conspiracy. *Id.* 451 U.S. at 639, 101 S.Ct. at 2066. The Court held that if any such right existed, its source must be federal common law. *Id.* at 640, 101 S.Ct. at 2066. The Court observed the narrow areas in which federal common law existed, *see id.* at 642, 101 S.Ct. at 2067, and declined to adopt a common law right of contribution. *See id.*

Moreover, subsequent to both decisions, the Supreme Court held in *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (per curiam), that the district court had federal question jurisdiction in an action brought by a motor common carrier to collect freight charges pursuant to tariffs filed in accordance with the Interstate Commerce Act. The Court held the "carrier's claim is, of necessity, predicated on the tariff—not on an understanding with the shipper." *Id.* This decision is persuasive on the same issue under the Communications Act because of the common genesis, provisions, and objectives of these statutes. *MCI Tel. Corp. v. Garden State Inv. Corp.,* 981 F.2d 385, 387 (8th Cir.1992).

---

provide and give lawful notice of its effective date. Any schedule so rejected by the Commission shall be void and its use shall be unlawful.
(e) Penalty for violations
In case of failure or refusal on the part of any carrier to comply with the provisions of this section or of any regulation or order made by

the Commission thereunder, such carrier shall forfeit to the United States the sum of $6,000 for each such offense, and $300 for each and every day of the continuance of such offense.

**5.** It is possible that MCI did not argue for jurisdiction on the basis of the *AT & T* decision. *See MCI,* 980 F.2d at 1022 (noting bases for MCI's arguments but not citing *AT & T* opinion).

Nor is the *AT & T* panel opinion inconsistent with the rule in other circuits that recently have reached the same conclusion regarding subject matter jurisdiction under 28 U.S.C. § 1337. *See MCI Tel. Corp. v. Graham,* 7 F.3d 477, 478–79 (6th Cir.1993); *MCI Tel. Corp.,* 981 F.2d at 388; *Richman Bros. Records v. U.S. Sprint Communications Co.,* 953 F.2d 1431, 1438 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3056, 120 L.Ed.2d 921 (1992). In fact, the Eighth Circuit in *MCI Tel. Corp.* cited *AT & T* for the proposition "that federal tariffs are the law, not mere contracts." 981 F.2d at 387 (citing *AT & T* and holding, "Although a user's refusal to pay charges fixed by a tariff will often arise in the context of a broken contract, the carrier's claim for payment is necessarily based on the filed tariff."). This court thinks the correct rule, recognized at least implicitly in *AT & T,* is that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1337, in conjunction with 47 U.S.C. § 203, because the carrier's claim for payment is based on the filed tariff. *See AT & T,* 357 F.Supp. at 978–79.

In this court's view, there is nothing in congressional action, a Supreme Court decision, or an *en banc* Fifth Circuit opinion to undercut the jurisdictional holding of *AT & T.* Therefore, under settled Fifth Circuit law, the *MCI* panel opinion must give way to the binding effect of *AT & T,* and this court must respectfully decline to follow *MCI.*

\* \* \* \* \* \*

MCI's motion to lift stay is granted. For the reasons stated, the court holds that it has subject matter jurisdiction in this case.

**SO ORDERED.**