WESTERN UNION INTERNATIONAL, INCORPORATED, Plaintiff–Appellant,

v.

DATA DEVELOPMENT, INCORPORATED, Defendant–Appellee.

No. 92–4981.

United States Court of Appeals, Eleventh Circuit.

Jan. 11, 1995.

---

J. Michael Haygood, Darrell T. Farr, Mack & Bernstein, Boca Raton, FL, Patricia N. Young, Office of the Gen. Counsel, MCI Communications, Washington, DC, for appellant.

Before KRAVITCH, ANDERSON and EDMONDSON, Circuit Judges.

ANDERSON, Circuit Judge:

## I. INTRODUCTION

Western Union International, Inc. ("Western Union") is a provider of interstate telecommunication services. As such, the terms and conditions of its services are governed by the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.* ("the Act"). The Act requires Western Union to file schedules of charges, commonly known as tariffs, with the Federal Communications Commission. *Id.* § 203. Western Union provided telecommunication services to Data Development, Inc. ("Data") under the terms and conditions of Western Union Tariff No. 27, which was duly filed with the FCC. It is now alleged that Data failed to pay for the services provided. Western Union filed this action in the district court for the Southern District of Florida. Before any responsive pleadings were filed, the district court *sua sponte* entered an order of dismissal based on lack of subject matter jurisdiction, finding that the claim did not arise under federal law.

Western Union appealed the dismissal. Data has made no appearance in the district court or this court; a letter filed with this court indicated that Data's assets have been sold. After hearing oral argument, we remanded the case to the district court to consider the issue of mootness. The district court having held that the action is not moot, we proceed to address the merits of the issue on appeal. This appeal involves an issue of law, so we review the district court's determination de novo. *Heuer v. United States Secretary of State,* 20 F.3d 424, 425 (11th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994). The issue before us is whether the district court has subject matter jurisdiction of this suit to collect the payment provided in the tariff.

## II. DISCUSSION

The tariff structure and obligations under the Communications Act are similar in all relevant respects to those under the Interstate Commerce Act. Telecommunication providers were subject to the regulations of the Interstate Commerce Commission before the passage of the Act and the establishment

of the FCC, and the tariff structure governing interstate commerce shares common roots and general provisions with that governing telecommunication. *Compare* 47 U.S.C.A. § 203 (West 1991) (outlining tariff procedures for common carriers of telecommunication) *with* 49 U.S.C.A. §§ 10761 & 10762 (West Supp.1994) (outlining the same for carriers providing interstate transportation).[1] With respect to a railroad's action against a customer for unpaid interstate charges provided in tariffs pursuant to the Interstate Commerce Act, the Supreme Court has held that the action arises under federal law because the statute required the "carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment," so that "their duty and obligation grow out of and depend upon that act." *Louisville & N.R.R. v. Rice,* 247 U.S. 201, 202, 38 S.Ct. 429, 429, 62 L.Ed. 1071 (1918). The holding of *Rice* was reaffirmed by a unanimous Court in *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983).

We think the outcome in this case is dictated by *Rice* and *Thurston Motor Lines.* Just as in *Rice* and *Thurston,* the statute involved in this case requires the carrier to "file . . . schedules showing all charges," 47 U.S.C.A. § 203(a) (West 1991), and provides that the carrier shall not "charge, demand, collect, or receive a greater or less or different compensation for such communication," *id.* § 203(c); the duties and obligations grow out of and depend upon the statute. *See Rice,* 247 U.S. at 202, 38 S.Ct. at 429. That the tariff scheme was the basis for federal jurisdiction in *Rice* was confirmed by a unanimous Court in *Thurston,* 460 U.S. at 535, 103 S.Ct. at 1344 ("[T]he parties are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation. A carrier's claim is, of necessity, predicated on the tariff—not an understanding with the shipper." (citations and internal quotation marks omitted)). The dispute between Western Union and Data is no more a simple contract action than was *Rice* or *Thurston Motor Lines.* The rationale supporting federal jurisdiction in those cases is equally applicable here.

Our conclusion that there is jurisdiction is reinforced by *AT & T v. Florida–Texas Freight, Inc.,* 357 F.Supp. 977 (S.D.Fla.1973), *aff'd,* 485 F.2d 1390 (5th Cir.1973). In *AT & T,* a provider of telecommunications services brought suit in federal court for alleged nonpayment for services provided under a tariff filed with the FCC. Although jurisdiction apparently was not contested, the court noted that jurisdiction was proper "pursuant to 28 U.S.C. § 1337 in conjunction with 47 U.S.C. § 203." *AT & T v. Florida–Texas Freight,* 357 F.Supp. at 978. The district court also noted that "a tariff, required by law to be filed, constitutes the law and is not merely a contract." *Id.* at 979. The holding was affirmed "[f]or reasons cogently expressed in the district court opinion." *AT & T v. Florida–Texas Freight,* 485 F.2d 1390 (5th Cir.1973).[2] Likewise, a majority of other circuits addressing the jurisdictional question have agreed that lawsuits for unpaid tariffs may be brought in federal court. *See, e.g., MCI Telecommunications Corp. v. Graham,* 7 F.3d 477 (6th Cir.1993); *MCI Telecommunications Corp. v. Garden State Inv. Corp.,* 981 F.2d 385 (8th Cir.1992); *Ivy Broadcasting Co. v. AT & T,* 391 F.2d 486 (2d Cir.1968).[3]

---

1. *See also ABC v. FCC,* 643 F.2d 818, 820 (D.C.Cir.1980) (quoting legislative history of the Communications Act and observing that the Act borrowed its language and purpose from the Interstate Commerce Act, and that variances in text "are made for the purpose of clarification . . . rather than as a manifestation of congressional intent to attain a different objective").

2. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

3. The Fifth Circuit refused to follow *Ivy* in *MCI Telecommunications Corp. v. Credit Builders of Am., Inc.,* 980 F.2d 1021 (5th Cir.), *vacated on other grounds and remanded,* —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d 676, *reinstated,* 2 F.3d 103 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993). The *Credit Builders* court cited neither *Rice* nor *Thurston Motor Lines,* the Supreme Court cases that we find controlling.

One court has questioned the precedential value of *Credit Builders,* holding instead that the opinion of the former Fifth Circuit in *AT & T v.*

The district court has jurisdiction over Western Union's lawsuit under 28 U.S.C. §§ 1331 (conferring federal jurisdiction in "all civil actions arising under the ... laws ... of the United States") and 1337 (establishing federal jurisdiction in "any civil action or proceeding arising under any act of Congress regulating commerce"). Western Union's cause of action arises under the Communications Act just as the lawsuits in *Rice* and *Thurston Motor Lines* arose under the Interstate Commerce Act.[4] We therefore need not consider any of Western Union's other proffered grounds for jurisdiction.

## III. CONCLUSION

For the foregoing reasons, we find that Western Union properly brought its claim against Data in federal court. The judgment of the district court is therefore reversed and remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

*Florida–Texas Freight, supra,* was controlling. *MCI Telecommunications Corp. v. United Showcase, Inc.,* 847 F.Supp. 510 (N.D.Tex.1994).

**4.** The district court observed that the Supreme Court has remarked that the Communications Act did not create new private rights. *Scripps–Howard Radio, Inc. v. FCC,* 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229 (1942). It also noted that one formulation of when a case "arises under" federal law is Justice Holmes' statement that "a suit arises under the law that creates the action," *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), a proposition that the Supreme Court more recently has said applies to "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). The district court therefore concluded that there was no federal jurisdiction.

The Supreme Court's statement in *Scripps–Howard Radio* was made in a significantly different context. The FCC had granted a request, without a hearing, by a radio station to increase its power and change its frequency; Scripps–

Howard protested the grant, claiming that its radio station would be adversely affected. Scripps–Howard sought a stay of the grant pending its appeal to the circuit court. The FCC argued that the federal courts had no power to issue such a stay. In ruling that issuance of the stay was within the jurisdiction of the federal courts, the Supreme Court confronted *inter alia* the argument that issuance of the stay would serve the interests of a private party, whereas the Communications Act was adopted to protect the public interest. 316 U.S. at 14–15, 62 S.Ct. at 882. In this context, the Court noted that while the Act did not create new private rights, the parties in the case had standing as representatives of the public interest. *Id.* The Court could not have intended its statement to have the broad meaning that the district court placed upon it. The Court undoubtedly was aware that, in spite of its statement that the Act "did not create new private rights," several provisions of the statute indeed created private causes of action. *See, e.g.,* 47 U.S.C. § 207 (allowing any person claiming to be damaged by a common carrier of telecommunication to bring suit for the recovery of damages). Additionally, *Scripps–Howard Radio* has not been cited in any published decision dealing with the tariff provisions of the Act. We find that case readily distinguishable.