**Keith MAYDAK, Plaintiff,**

v.

**BONDED CREDIT COMPANY, Defendant.**

Civ. No. 94–1539–HA.

United States District Court, D. Oregon.

May 11, 1995.

Keith Maydak, White Deer, PA, pro se plaintiff.

Jeffrey I. Hasson, Hasson & Zimmerman, Portland, OR, for defendant.

## OPINION

HAGGERTY, District Judge:

Plaintiff, Keith Maydak, brings this action on behalf of himself and Confidential Services of America, Inc. ("CSA"), a Nevada corporation in which plaintiff maintains an ownership interest. Plaintiff seeks relief in the form of a declaratory judgment that neither he nor CSA is liable to defendant Bonded Credit Company ("Bonded"), a collection agency, for any amount of money allegedly owed because of calls made to a 1–900 telephone number. Plaintiff also seeks to enjoin Bonded from commencing any future action against himself or CSA in relation to the subject telephone charges. The matter before the court is defendant's motion to dismiss or, in the alternative, for judgment on the pleadings, and for sanctions. For the reasons provided below, this motion is granted in part and denied in part.

## BACKGROUND

In 1991, CSA subscribed for local telephone service from General Telephone Company Northwest ("GTE"). Thereafter, GTE, acting on behalf of American Telephone and Telegraph Company ("AT & T"),[1] invoiced CSA for several calls allegedly made to the telephone number 1–900–250–2555.[2] GTE was evidently unsuccessful in its attempts to collect payment for calls to the 1–900 num-

---

1. GTE primarily functions as an intrastate telecommunications service provider, but it also provides billing services to interstate telecommunications carriers, including AT & T.

2. According to plaintiff, GTE transmitted payment for these calls to AT & T pursuant to an existing billing agreement, and then assumed from AT & T the rights to collect payment from CSA.

ber, and on January 24, 1992, it assigned CSA's account to Bonded for collection.

On November 18, 1993, Bonded sent a letter to CSA which stated in part:

DUE TO GENERAL TELEPHONE COMPANY CHANGING BILLING LOCATIONS, THEY ARE NOT CURRENTLY ABLE TO PROVIDE AN ITEMIZATION OF [THEIR] BILLS. UNTIL THEN COLLECTION ACTIVITY WILL CEASE.

On November 23, 1994, Bonded sent another letter to CSA. This letter indicated that Bonded had resumed its collection efforts.[3]

On December 20, 1994, plaintiff initiated the instant action to resolve a dispute over the validity of the outstanding balance of CSA's telephone service account. Plaintiff's complaint alleges that this court has jurisdiction under 28 U.S.C. § 1331. More specifically, plaintiff alleges that this court's federal question jurisdiction has properly been invoked because plaintiff's cause of action is based upon the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 151 *et seq.* Plaintiff's complaint also indicates that this action for declaratory relief is proper pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

**CONTENTIONS OF THE PARTIES**

Plaintiff initially notes that telephone calls made to the number 1–900–250–2555 are regulated by a tariff which AT & T was required to file with the Federal Communications Commission ("FCC"). *See* 47 U.S.C. § 203(a) and (c). Plaintiff then contends that AT & T set its billing rate for such calls in excess of the rate fixed by the tariff. Plaintiff further contends that the charging or collection of fees billed pursuant to the excessive rate, whether by AT & T or any of the

subsequent assignees of the CSA account, violates section 203(c) of the FCA.[4]

Bonded raises two distinct challenges to the propriety of the instant action. First, Bonded contends that plaintiff has failed to allege a "case or controversy" sufficient to confer jurisdiction under 28 U.S.C. § 2201.[5] Second, Bonded contends that plaintiff has failed to state a claim upon which relief can be granted because the FCA does not provide for a private right of action.

Bonded also contends that plaintiff's claims for relief are frivolous, and that plaintiff should have known that they are frivolous. Bonded therefore claims that it is entitled to sanctions under Fed.R.Civ.P. 11 in the form of an award of attorney fees.

**DISCUSSION**

1. *Real Party in Interest*

Federal Rule of Civil Procedure 17(a) provides in part that "[e]very action shall be prosecuted in the name of the real party in interest." The instant action is being prosecuted solely in the name of the plaintiff, Keith Maydak. Based upon a review of the record, however, it is clear that CSA is a real party in interest. The court cannot surmise whether CSA alone is the real party in interest or whether plaintiff and CSA are both real parties in interest. The instant action concerns whether Bonded may collect the outstanding balance of a telephone service account. Plaintiff has alleged that CSA, not Keith Maydak, was the subscriber of the subject telephone service, and that GTE (and subsequently Bonded) assumed the rights to collect payment from CSA. Plaintiff has not specifically alleged that Bonded has attempted to collect any amounts from him individu-

---

**3.** The letter expressly stated that:

WE DO NOT NEED TO PROVIDE ANY AUTHORIZATION TO COLLECT THIS BILL. YOU KNOW THE BILL IS OWED. IF YOU DONT (sic) WANT TO PAY US THEN PAY [GTE] & GET THIS CLEARED LIKE IT SHOULD'VE BEEN 3 YEARS AGO.

**4.** The duties imposed by 47 U.S.C. § 203(c) have been succinctly summarized as follows: "Section 203(c) provides that no carrier may provide service until the applicable tariff is legally in force and that the service and charges thereto must

conform to the express terms of the tariff...." *Comtronics, Inc. v. Puerto Rico Tel. Co.,* 409 F.Supp. 800, 815 (D.P.R.1975).

**5.** Because it is fundamental that 28 U.S.C. § 2201 simply creates a remedy and is not an independent basis for federal jurisdiction, *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950), the court construes Bonded's argument as a challenge to the availability of relief under 28 U.S.C. § 2201 rather than as a jurisdictional challenge.

ally. Nor has plaintiff specifically alleged that he might be individually liable for any amounts owed by CSA. However, the communications sent by Bonded to CSA concerning the alleged debt are addressed to Keith Maydak.

Moreover, notwithstanding the omission of CSA from the caption of the case, plaintiff does not appear to contest that CSA is a party to the action. Plaintiff's amended complaint expressly alleges that "[t]his is a derivative action filed by a shareholder on behalf of himself and on behalf of [CSA]." Plaintiff's Amended Complaint for Declaratory Judgment, ¶ 2.

To the extent that CSA alone is the real party in interest, this action is dismissed on the ground that a corporation may not be represented by someone who is not an attorney.[6] *Church of the New Testament v. United States,* 783 F.2d 771, 773 (9th Cir.1986). Because plaintiff may also be a real party in interest, and because it is appropriate for plaintiff to represent himself, the court will examine the parties' contentions as to the merits of the case.

### 2. *Declaratory Judgment Act*

 Bonded's argument that plaintiff has failed to allege an "actual controversy" within the meaning of 28 U.S.C. § 2201 is without merit.[7] Bonded argues that the following paragraph in plaintiff's complaint demonstrates the absence of an actual controversy:

> On November 18, 1993, Bonded Credit Company communicated a forgiveness letter to CSA advising CSA that it did not have to remit payment due to a reason wholly irrelevant to this action.

Plaintiff has, however, cured any defect which may have existed in his initial pleading. In an amended complaint filed pursuant to an order of this court, plaintiff explicitly states that on at least one occasion after November 18, 1993, Bonded demanded payment from CSA for calls made to the subject 1–900 number. Accordingly, any confusion created by plaintiff's selection of the term "forgiveness letter" to describe the November 18, 1993 communication CSA received from Bonded has been clarified. The immediacy of the controversy between the parties cannot be disputed.

### 3. *Federal Communications Act*

 Bonded contends that there is no private right of action under the FCA. Therefore, according to Bonded, plaintiff's cause of action which is based exclusively on a purported violation of the FCA must be dismissed for failure to state a claim. Bonded reaches the correct conclusion, namely, that plaintiff cannot maintain the instant action in this court, however, Bonded followed an unsure path in arriving at that conclusion. A few brief comments are therefore appropriate.

Bonded offers no explanation in support of its argument that a private cause of action cannot lie under the FCA. Instead, Bonded supports its argument by simply citing to the Supreme Court case of *Scripps–Howard Radio, Inc. v. Federal Communications Comm'n,* 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942) and its supposed progeny. Bonded, however, reads *Scripps–Howard* too broadly. Although the Court did remark that the FCA "did not create new private rights," *Id.* at 14, 62 S.Ct. at 882, it could not have intended that statement alone to abrogate several provisions of the FCA which indeed created private causes of action. *Western Union Int'l, Inc. v. Data Dev., Inc.,* 41 F.3d 1494, 1497 n. 4 (11th Cir.1995) (observing that 47 U.S.C. § 207 allows any person claiming to be damaged by a common

---

**6.** The court recognizes that it would be premature at this stage of the proceeding to dismiss the action on the ground that it is not prosecuted in the name of the real party in interest, *see* Fed. R.Civ.P. 17(a), however, that is not the ground on which the court's ruling is based.

**7.** 28 U.S.C. § 2201 states in part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be sought.

The Ninth Circuit has offered the following interpretation of 28 U.S.C. § 2201: "The district court ... may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions." *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1514 (9th Cir.1994).

carrier of telecommunication to bring suit for the recovery of damages).

■ The reluctance of many courts to find private rights of action under the FCA stems from the fact that Congress enacted the FCA "to protect the public interest in communications," *Scripps–Howard,* 316 U.S. at 14, 62 S.Ct. at 882, as well as the fact that the FCA represents "a unified and comprehensive regulatory system" for the telecommunications field, *Federal Communications Comm'n v. Pottsville Broadcasting Co.,* 309 U.S. 134, 137, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940). *See e.g. Ghartey v. Chrysler Credit Corp.,* No. CV–92–1782, 1992 WL 373479, at *5 (E.D.N.Y. Nov. 23, 1992); *Dean v. Channel 5,* No. CA3–90–2468–T, 1991 WL 85902, at *1 (N.D.Tex. Jan. 7, 1991). In fact, in *Scripps–Howard,* the Court decided that the "private litigants [had] standing only as representatives of the public interest." 316 U.S. at 14. In the instant case, however, plaintiff does not contend nor does the court find that plaintiff is acting as a representative of the public interest. Rather, the instant action unmistakably involves the assertion of private rights.

■ It is now well established that "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law...." *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486, 491 (2d Cir.1968). In other words, the FCA and the tariffs filed pursuant to the FCA (and federal common law to the extent that no specific tariff provision or provision of the FCA applies) regulate the practices and charges of telecommunication companies. Although plaintiff correctly claims that AT & T, as a provider of interstate telecommunication services, was obligated to set its billing rates in accordance with its federal tariffs, an allegation that AT & T breached that duty does not automatically confer federal jurisdiction over the instant action against Bonded. "Tariffs filed with the F.C.C. conclusively and exclusively control the rights and liabilities between a carrier and its customer." *MCI Telecommunications Corp. v. Graham,* 7 F.3d 477, 479 (6th Cir.1993). As noted above, Bonded is a collection agency, not a provider of interstate telecommunication services.

Moreover, the instant dispute only indirectly involves the rendition of telecommunications service. Instead, the gravamen of the dispute concerns the attempted collection of a debt. This court is unaware of a single case not directly involving the practices or charges of telecommunications companies in which a federal court has found jurisdiction under the FCA. *See Wickman v. Canandaigua Wine Co., Inc.,* No. 93–1213–PFK, 1993 WL 390052, at *2–3 (D.Kan. Sept. 10, 1993); *Thermalcraft, Inc. v. U.S. Sprint Communications,* 779 F.Supp. 1039, 1041–42 (W.D.Mo.1991); *see also United Tel. Co. of Carolinas, Inc. v. Federal Communications Comm'n,* 559 F.2d 720, 723 (D.C.Cir.1977) (the FCA's purpose is to protect the public interest rather than to provide a forum for the settlement of private disputes).

■ In light of the above, this court concludes that plaintiff has failed to allege a cause of action under the FCA. Because construction of plaintiff's "well-pleaded complaint" reveals no other grounds which might vest this court with jurisdiction, this case is dismissed for lack of subject matter jurisdiction.[8] *See Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986).

---

8. Other than the FCA, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* appears to be the only conceivable law under which plaintiff's cause of action may have arisen for purposes of conferring federal question jurisdiction under 28 U.S.C. § 1331. The "well-pleaded complaint" rule teaches that the federal question upon which subject matter jurisdiction is based must be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987);

*accord Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 (9th Cir.1993); *Sullivan v. First Affiliated Sec., Inc.,* 813 F.2d 1368, 1371 (9th Cir.) (as amended), *cert. denied,* 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). Plaintiff's amended complaint on its face, however, did not specifically invoke the FDCPA. Additionally, the court does not construe the amended complaint as stating an arguably plausible claim under the FDCPA. *See Robbins v. Reagan,* 780 F.2d 37, 43 (D.C.Cir.1985).

**1310**

### 4. *Sanctions*

Federal Rule of Civil Procedure 11 imposes upon attorneys and unrepresented litigants an affirmative duty to conduct a competent and reasonable inquiry of the facts and of the law in advance of filing any court papers. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986); *see also Albright v. Upjohn Co.*, 788 F.2d 1217, 1221 (6th Cir. 1986). It follows that Rule 11 sanctions are appropriate if a party brings either a frivolous action or an action for an improper purpose, "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11(b); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990). However, if the complaint "states an arguable claim," sanctions are generally inappropriate. *Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir.1988).

Although this court has determined that it lacks jurisdiction over plaintiff's cause of action, it is not axiomatic that sanctions are warranted. Because plaintiff is proceeding in a *pro se* capacity, his pleadings are entitled to a permissive reading. *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir.1992); *see also Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988). As such, this court cannot conclude that the instant action is frivolous. Nor does this court conclude that the instant action was filed for an improper purpose. Bonded's request for sanctions is denied.

### CONCLUSION

For the reasons provided above, this action is dismissed on the ground that plaintiff, a non-attorney, may not represent CSA, a corporation or, in the alternative, on the ground that this court lacks subject matter jurisdiction. Bonded's motion to dismiss (doc. # 4–1) is granted, Bonded's alternative motion (doc. # 4–2) for judgment on the pleadings is denied as moot, and Bonded's motion (doc. # 4–3) for sanctions is denied.

As a final matter, this court is mindful that prior to dismissal of a *pro se* complaint, the court must ordinarily instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend the complaint. *See Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir.1987). However, a court may properly dismiss a *pro se* complaint outright in situations, like here, where it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Lab.*, 622 F.2d 458, 460 (9th Cir.1980) (per curiam); *accord Eldridge*, 832 F.2d at 1135–36.

### ORDER

For the reasons stated in the accompanying Opinion, defendant's motion to dismiss (doc. # 4–1) is granted, defendant's alternative motion (doc. # 4–2) for judgment on the pleadings is denied as moot, and defendant's motion (doc. # 4–3) for sanctions is denied. All other pending motions are denied as moot.

IT IS SO ORDERED.