188 N.J. Super. 455 (1982)
457 A.2d 1196
NEW JERSEY BELL TELEPHONE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
TOWN OF WEST ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 6, 1982.
Decided December 16, 1982.
*456 Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.
*457 Donald B. Heeb, attorney for appellant.
Joseph G. Dooley, Jr., attorney for respondent.
The opinion of the court was delivered by J.H. COLEMAN, J.A.D.
The novel question raised by this appeal is whether plaintiff can lawfully provide a service covered by a filed tariff at less than the tariff rate. The trial judge held that it would be inequitable not to enforce the contract price even though it did not conform to the filed tariff. We disagree and reverse.
The facts essential to our determination are not disputed. Plaintiff contracted with defendant to install a more sophisticated fire alarm system known as the emergency voice reporting (EVR). The old pull-box alarm system was to be replaced with a system of telephones located along different streets. The EVR system is used to report an emergency by simply picking up one of the phones, which will be answered by a central dispatcher, and reporting the emergency.
The contract for rental, installation and maintenance of the EVR system which consisted of 100 units was submitted to public bidding pursuant to N.J.S.A. 40A:11-1 et seq. Two bids were submitted. Plaintiff's bid price for the 100 units was $15,571.68 a year. Since this was the lowest responsible bid, plaintiff was awarded the contract. After the units were installed and operational for sometime, plaintiff discovered that its bid price was not in accordance with the filed tariff for the EVR service which was initially filed with the Board of Public Utility Commissioners (PUC) in 1960. The tariff covering the present contract was filed with PUC in 1976, which established a rate of $18,128.64 for the 100 units a year. Hence, plaintiff's bid was $2,556.96 less than the filed tariff.
Plaintiff's numerous attempts to have the contract price adjusted to conform to the tariff were to no avail. In early 1979 plaintiff's tariff for the EVR system was increased and defendant was made aware of the increase. Plaintiff commenced this *458 action in the Chancery Division seeking a declaratory judgment determining that defendant was required to pay the prevailing tariff rates for the EVR system. Defendant raised estoppel and reliance on plaintiff's lowest bid in conformity with the Local Public Contract Law (N.J.S.A. 40A:11-1 et seq.). Defendant also filed a counterclaim seeking damages for being "potentially exposed to substantial financial losses due to plaintiff's negligence, fraud and/or mistake." Following a nonjury trial, the judge dismissed the complaint but made no reference to the counterclaim.[1] He found that there was a clear violation of the tariff although it was completely inadvertent and was not anybody's fault. In his decision he stated,
... It it seems to me that if we balance the equities in this particular situation where everyone conceives that it was just an error on the part of the representative of the telephone company, that the equities have to be on the side of the town.
Here, the town commission put out a contract and all of the citizens were relying upon the town commission to get the services for the lowest amount. They got the services for the lowest amount and it just seems to me it would be inequitable at this particular posture to upset the contract.
So that's the way I'll rule, ... defendant should prevail because of the principles of estoppel, of fair dealing and the general equities of the proposition and consequently I'll find in favor of the defendant.
Plaintiff contends that defendant is obligated to pay for the ERV services at the prevailing tariff rates irrespective of the contract price. This issue brings into sharp focus the distinction between contract rates for services and the filed tariff rate for the same services. A tariff is a published schedule of rates, filed by a public utility and, thereafter, "applicable equally to all customers." In re Saddle River Application, 71 N.J. 14, 29 (1976). It is undisputed that plaintiff is a public utility. A contract, on the other hand, is an agreement individually negotiated between a public utility and a particular customer with rates that may differ according to differences in *459 the particular service provided to that particular customer. Id. at 29-30. Our Supreme Court recently held in City of Plainfield v. Public Service Elec. and Gas Co. 82 N.J. 245, 252 (1980) that the Public Utility Act of 1911, L. 1911, c. 195, § 18, codified as amended (L. 1930, c. 35, § 1) at N.J.S.A. 48:3-1 and 48:3-4, prohibits unjustly discriminatory utility rates and unreasonable preferences.
We are satisfied that plaintiff was bound by law to follow the tariff rates filed irrespective of whether defendant had knowledge of those rates. Saddle River, supra, 71 N.J. at 29. It is well established that a tariff required by law to be filed by a public utility "is not a mere contract; it is the law." Essex Cty. Welfare Bd. v. New Jersey Bell Tel. Co., 126 N.J. Super. 417, 421 (App.Div. 1974).
We must next decide whether the fact that plaintiff was awarded the contract as the lowest responsible bidder pursuant to the Local Public Contract Law (N.J.S.A. 40A:11-1 et seq.), precludes a determination that the contract rates represent an unreasonable preference or unjust discrimination under N.J.S.A. 48:3-1 and 48:3-4. For the reasons which follow, we conclude that it does not.
The discussions between the parties which predated the public bidding on the EVR system are most persuasive that the parties intended for the filed tariff to be controlling. In July 1975 plaintiff sent defendant a copy of its standard form term agreement, which stated that plaintiff's equipment was subject to its tariff rates. In August 1975 defendant's fire chief specifically asked plaintiff if the EVR service was subject to filed tariff rates and if plaintiff could guarantee that any quoted rates could be maintained unchanged over a set period of years. In late August 1975 plaintiff replied to the fire chief's inquiry advising him that all equipment and services in its proposal were at the Public Utility Commissioner's tariff rates and that plaintiff could not guarantee that the rates would not go up in the future. In September 1975 plaintiff's reply letter to the fire chief was submitted to defendant's governing body.
*460 In September 1975 defendant's attorney asked plaintiff for a copy of the tariff rates referred to in the formal agreement. In reply, plaintiff's representative advised him that it was against plaintiff's policy to send copies of its tariff to its customers, but indicated to him that its tariffs were matters of public record and were available for review at any of its business offices. Hence, we disagree with defendant's assertion that it was misled by the contract rates and that it should be permitted to successfully defend the litigation on the theories of reliance and estoppel. Moreover, plaintiff contends, and defendant has not refuted, that even at the increased 1979 tariff rate plaintiff's EVR service over the contracted ten-year period will still be $46,865 cheaper than the same services if supplied by Signal, the other bidder.
Consequently, we disagree with the trial judge that the equities are on the side of defendant. As was observed in Plainfield, utility rate preferences between "like consumers" are "patently inequitable." 82 N.J. at 259. The contract between defendant, a subdivision of the State, and plaintiff, a public service corporation, "is a contract subject to the State's sovereign power over rates, and when, as in this case, the State through its Board of Public Utility Commissioners exercises its sovereignty over rates, the contract rights of the parties must yield." Atlantic Coast Electric Rail Co. v. Public Utility Comm'rs Bd., 92 N.J.L. 168, 173 (E. & A. 1918), app. dism. 254 U.S. 660, 41 S.Ct. 10, 65 L.Ed. 462 (1920).
We, therefore, conclude that the decision of the trial court dismissing the complaint granted defendant an unreasonable preference in violation of N.J.S.A. 48:3-1 and 48:3-4. Accordingly, the judgment dismissing the complaint is reversed. The matter is remanded to the trial court to enter judgment for plaintiff in accordance with the prevailing tariff rates and to dismiss the counterclaim. We do not retain jurisdiction.
NOTES
[1] The appellate record is silent as to the disposition of the counterclaim. Since defendant rested its case without introducing any evidence, we assume the trial judge inadvertently failed to dismiss the counterclaim.