**COOPERATIVE COMMUNICATIONS, INC., a Utah corporation, Plaintiff,**

v.

**AT & T CORP., a New York corporation, Defendant.**

Civ. No. 94–C–431G.

United States District Court,
D. Utah,
Central Division.

Nov. 15, 1994.

1512

Thomas R. Karrenberg and John P. Mullen of Anderson & Karrenberg, Salt Lake City, UT, for plaintiff Cooperative Communications, Inc. ("CCI").

Richard M. Hymas of Nielsen & Senior, Salt Lake City, UT, for AT & T.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the Court on Defendant AT & T Corporation's ("AT & T") Motions to Dismiss and to Strike. Plaintiff Cooperative Communications, Inc. ("CCI"), was represented by Thomas R. Karrenberg and John P. Mullen of Anderson & Karrenberg. AT & T was represented by Richard M. Hymas of Nielsen & Senior. The parties filed extensive memoranda and supporting materials, after which the Court heard oral argument and took the matter under advisement. Having considered the oral argument, motions, and memoranda on file, and now being fully advised, the Court renders its Memorandum Decision and Order.

### FACTUAL BACKGROUND

In 1988, AT & T obtained approval from the Federal Communications Commission ("FCC") for a series of volume-based tariffs which allowed AT & T to sell long distance

communications services that could be purchased in large quantities at a discounted rate. Thereafter, companies known as "aggregator" companies began to contract with AT & T to purchase large amounts of AT & T long distance services at the discounted rates. The aggregators would then contract with persons or entities using smaller amounts of long distance service. The aggregator companies would aggregate the smaller customers, increasing their joint purchasing capacity, enabling the customers to purchase, through the aggregators, AT & T long distance services at a lower price than the persons or entities could have obtained from AT & T directly.

In 1989, Edwin B. HerrNeckar and Anne Smith HerrNeckar incorporated CCI under Utah law as an aggregator telecommunications company. CCI alleges that shortly after CCI commenced operation, the local office of AT & T attempted to drive CCI out of business. CCI claims that AT & T, through the Salt Lake City branch office, engaged in wrongful acts as part of a systematic campaign aimed at discrediting CCI and interfering with CCI's customers. CCI alleges, inter alia, that AT & T made intentional misrepresentations to CCI's clients regarding CCI's ability to provide the services it promised, that AT & T misappropriated confidential client billing information, and that AT & T used that information in attempting to destroy CCI's customer base.

Specifically, CCI's complaint lists seven causes of action. They are: (1) intentional interference with prospective economic relations; (2) interference with contract; (3) business disparagement; (4) breach of the covenant of good faith and fair dealing; (5) unfair competition; (6) violation of the Utah Uniform Trade Secrets Act, Utah Code Ann. §§ 13–24–1 to –9 (1992); and (7) violation of the Federal Communications Act, 47 U.S.C. §§ 151–613 (1991 & Supp.1994) ("Communications Act" or "Act").

AT & T responded by moving to dismiss CCI's state law claims on preemption grounds, and to dismiss CCI's federal claim, as well as any state law claims not preempted, as barred by the filed tariff doctrine. AT & T also moved to strike from the complaint all allegations regarding alleged wrongful acts occurring more than two years before the suit was filed as being time barred, in light of the two-year statute of limitations in the Communications Act.

### Standard of Review

In determining whether to grant a motion to dismiss, this Court looks solely to the material allegations of the complaint, and must accept all material allegations of the complaint as true. *Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 870 (10th Cir.1992). Additionally, all inferences that can be drawn from the allegations must be drawn in favor of the plaintiff. *Id.; Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). A motion to dismiss will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### I. APPLICATION OF THE FEDERAL COMMUNICATIONS ACT IN PREEMPTION OF STATE LAW CLAIMS

AT & T first moves this Court to dismiss CCI's six state statutory and common law claims as being preempted by the Federal Communications Act, 47 U.S.C. §§ 151–613 (1991 & Supp.1994).

### A. The Preemption Doctrine

The preemption doctrine originates from the Supremacy Clause in the United States Constitution: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art VI, cl. 2. Under the Supremacy Clause, state laws which "'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution,' are invalid." *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991) (quoting *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824)).

■ The primary inquiry in all preemption cases is the objective or purpose of Congress in enacting the particular statute. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985); *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Congressional intent may be expressly stated in the language of the statute, or may be implied by the structure and purpose of the statute. *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617. Absent an express congressional statement, state law may be preempted in two situations: first, if the state law actually conflicts with federal law, *see id.; Pacific Gas & Elec. Co. v. Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983); or second, if federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

### B. The Federal Communications Act

#### 1. Broad Scope of the Act

■ In the instant case, AT & T asserts that the comprehensive regulatory scheme of the Communications Act is evidence of Congress' intent to preempt the entire field. The express purpose of the Communications Act is to "regulat[e] interstate and foreign commerce in communication by wire and radio so as to make available . . . to all the people of the United States a rapid, efficient . . . communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151 (1988). To that end, the Act governs "all interstate . . . communication by wire or radio and . . . all persons engaged within the United States in such communication," *id.* § 152(a), and provides that an interstate telephone carrier's "charges, practices, classifications, and regulations for and in connection with [its] communications service, shall be just and reasonable," *id.* § 201(b).

AT & T, in asserting that the comprehensive nature of the Act demonstrates Congress' intent to occupy the entire field of long-distance telecommunications service, relies primarily on *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486 (2d Cir.1968). In *Ivy,* the Second Circuit considered whether the district court had jurisdiction over a claim for negligence and breach of contract in connection with telephone services provided by a carrier regulated under the Communications Act. The plaintiff alleged grossly negligent and unreasonably delayed installation of telephone lines and grossly negligent operation of those lines, and claimed that federal jurisdiction lay under the Communications Act. The district court dismissed the complaint for lack of subject matter jurisdiction, stating that the claims of negligence and breach of contract did not arise out of the Communications Act, but rather out of state tort and contract law. The Second Circuit reversed and remanded the case, holding that although the plaintiff's claims were not governed by the Act, such claims were governed by federal common law emanating from the Act. The court stated:

> Questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and that the states are precluded from acting in this area.

*Ivy,* 391 F.2d at 491. Relying on this language, AT & T asserts that because the state law claims brought by CCI relate to communications services, those claims are preempted by the Communications Act.

#### 2. Savings Clause of the Act

The court in *Ivy* did not address the "savings clause" of the Communications Act, set forth at section 414. The savings clause provides:

> § 414 *Exclusiveness of Chapter*
>
> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414. At issue, then, is whether the savings clause preserves CCI's state causes of action against AT & T.

Courts in other jurisdictions have held that the savings clause preserves causes of action for breaches of duties distinguishable from those created under the Act. For example, in *Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), the Illinois Supreme Court ruled that "state law remedies which do not interfere with the Federal government's authority over interstate telephone charges or services, and which do not otherwise conflict with an express provision of the Act, are preserved by section 414." *Id.*, 98 Ill.Dec. at 30, 493 N.E.2d at 1051. In *Kellerman*, the plaintiffs brought state law claims of fraud and deceptive advertising against MCI, a provider of long-distance telephone service. MCI argued that the claims were preempted by the Communications Act, relying, in part, on *Ivy.* The *Kellerman* court rejected that argument, and in reviewing the holding of *Ivy*, as well as the language of the savings clause, stated:

> [W]e believe that section 414, when considered in the context of the entire act, should be construed as preserving State-law "causes of action for breaches of duties distinguishable from those created under the act." State-law remedies which do not interfere with the Federal government's authority over interstate telephone charges or services, and which do not otherwise conflict with an express provision of the Act, are preserved by section 414.

*Id.* (quoting *Puerto Rico Telephone Co. v. F.C.C.*, 553 F.2d 694, 708 (1st Cir.1977)).

Similarly, in *Bruss Co. v. Allnet Communication Services*, 606 F.Supp. 401 (N.D.Ill. 1985), the court held that section 414 preserved the common law claims of the plaintiffs. The plaintiffs had sued Allnet, a provider of long-distance telephone services, alleging common law fraud and violations of Illinois' deceptive trade and consumer fraud acts. The court found that the duties owed by the defendants under the common law causes of action were different from those duties created by the Communications Act. The court stated:

> None of these causes of action conflicts with provisions of the Communications Act or interferes in any way with the regulatory scheme implemented by Congress. The Court therefore concludes that § 414 applies to preserve these causes of action.

*Id.* at 411. *See also Financial Planning Inst., Inc. v. American Tel & Tel. Co.*, 788 F.Supp. 75 (D.Mass.1992). The *Financial Planning* court clarified the intended function of the savings clause:

> Not only did Congress *not* express an intent to provide for an exclusive federal remedy for a breach of contract for telecommunications services, but by enacting the savings clause, Congress specifically provided for the preservation of existing statutory and common law claims in addition to federal causes of action.

*Id.* at 77.

■ In the instant case, six of CCI's claims are based on state common law or state statutory grounds: intentional interference with prospective economic relations; interference with contract; business disparagement; breach of the covenant of good faith and fair dealing; unfair competition; and violation of the Utah Uniform Trade Secrets Act. CCI contends that these claims exist as separate causes of action, and were not created by the Communications Act. AT & T has not cited to any specific sections of the Communications Act which conflict with CCI's state law claims. Additionally, AT & T's contention that these claims are preempted ignores the purpose underlying section 414. In enacting the Communications Act, it is manifest that Congress intended to occupy the field of telecommunications, in order to make available to all people of the United States a rapid, efficient, reasonably-priced communications service, governed by one uniform regulatory scheme. However, inclusion of the savings clause clearly indicates Congress' intent that independent state law causes of action, such as interference with contract or unfair competition, not be subsumed by the Act, but remain as separate causes of action. Hence, while some state law claims may relate to providers of telecommunications service, but nevertheless stand as independent claims not arising under the Communications Act.

Based on the foregoing, this Court holds that section 414 of the Federal Communications Act preserves CCI's state law claims.

## II. APPLICATION OF FEDERAL COMMON LAW IN PREEMPTION OF STATE LAW CLAIMS

█ AT & T also contends that CCI's state law claims are preempted by federal common law, even absent a conflicting provision in the Communications Act. Again, AT & T relies on *Ivy,* supra. The *Ivy* court, after concluding that the plaintiffs' claims did not implicate any specific provision of the Communications Act, stated that "[w]here neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law." 391 F.2d at 491. The court in *Ivy* explained the application of federal common law as follows:

> It seems reasonable that the congressional purpose of uniformity and equality should be taken to imply uniformity and equality of service.... It seems to us that the congressional purpose can be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards.

*Id.*

AT & T also cites *Nordlicht v. New York Telephone Co.,* 799 F.2d 859 (2d Cir.1986), as affirming application of federal common law to actions relating to communications services. *Nordlicht* concerned the rates charged for international telephone service. The court noted that plaintiff did not allege violation of any specific provision of the Communications Act, but ruled that federal common law preempted Nordlicht's claims concerning the *international* calls. *Id.* at 862. The court approved and followed *Ivy* with respect to interstate telecommunications service, but ruled that the same considerations would justify application of federal common law to international telecommunications service.

In light of *Ivy* and *Nordlicht,* AT & T argues that this Court should determine that CCI's claims are preempted by federal common law in order to preserve the congressional purpose of uniformity and equality. However, both *Ivy* and *Nordlicht* are distinguishable from the case at bar. *Ivy* as well as *Nordlicht* dealt with the provision of telecommunications services. *Ivy* was an action for negligence and breach of contract in the provision of interstate telephone service, while *Nordlicht* addressed the rates charged for international telephone service. Clearly, such matters are governed by the Communications Act.

By way of contrast, in the case at bar, CCI's state law causes of action, which assert business disparagement, fraud, and misrepresentation, do not involve the *provision* of telecommunications services. Rather, those causes of action concern alleged actions by AT & T as a *provider* of telecommunications services. The mere fact that AT & T provides services governed by the Act is alone insufficient to bring all of AT & T's actions within the scope of that Act. CCI's claims do not implicate the standards of uniform and equal service that *Ivy* and its progeny sought to protect under federal common law.

Based on the foregoing, this Court holds that CCI's state law claims are not preempted by federal common law.

## III. APPLICATION OF ALLEGED BREACH OF THE COMMUNICATIONS ACT IN PREEMPTION OF STATE LAW CLAIMS

█ AT & T's final argument for preemption is based on CCI's Seventh Cause of Action, claiming breach of the Communications Act. That claim does not allege any additional actions or misdeeds by AT & T which would constitute violations of the Act, but rather incorporates by reference the previous 237 paragraphs of the complaint.[1]

---

1. The Seventh Cause of Action states as follows:

 238. CCI incorporates by reference paragraphs 1 through 237.

 239. The actions of AT & T as described above, including but not limited to AT & T deliberate violations of applicable tariffs, constitute violations of the Federal Communications Act,

Those paragraphs, however, contain the allegations which form the basis of the state law claims. AT & T asserts that by referencing such allegations CCI has admitted that the very actions alleged in the state law claims constitute violations of the Communications Act, and that those state law claims therefore are preempted. CCI submits that there was no intended admission as claimed, and that it ought to be permitted to amend the Seventh Cause of Action. This Court agrees, and will permit amendment of that cause of action. Accordingly, plaintiff is granted leave to amend the Seventh Cause of Action.

## IV. APPLICATION OF THE FILED TARIFF DOCTRINE TO STATE LAW CLAIMS AND FEDERAL CLAIM

■ AT & T has also moved to dismiss CCI's federal claim, as well as any state law claims that are not preempted, as being barred by the so-called filed tariff doctrine.

■ Section 203 of the Communications Act requires common carriers to file with the Federal Communications Commission schedules of their charges, as well as any regulations, classifications, and practices affecting such charges. 47 U.S.C. § 203(a). The filed tariff doctrine prohibits such carriers from charging rates other than those on file. *See New Jersey Bell Tel. Co. v. Town of West Orange*, 188 N.J.Super. 455, 457 A.2d 1196 (App.Div.1982). The doctrine has been extended across the spectrum of regulated utilities.[2] The Supreme Court, in *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981), explained that " '[t]he considerations underlying the doctrine ... are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant.' " *Id.* at 577–78, 101 S.Ct. at 2930 (quoting *City of*

*Cleveland v. F.P.C.*, 525 F.2d 845, 854 (D.C.Cir.1976)).

*Marco Supply Co. v. AT & T Communications, Inc.*, 875 F.2d 434 (4th Cir.1989), is illustrative of the typical application of the filed tariff doctrine in the telecommunications industry. In that case, Marco Supply Company ("Marco") allegedly had contracted with AT & T for installation of a computer-telephone network, but discovered that it was being charged more than the prices stated in the contract. The Fourth Circuit held that section 203 of the Communications Act required AT & T to charge all of its customers only those rates established in the tariffs filed with the FCC. The court stated:

> The general case law is that a regulated carrier *must* charge the tariff rate established with the appropriate regulatory agency, even if it has quoted or charged a lower rate to its customer.

*Id.* at 436. The court also noted, generally, that "the aggrieved customer cannot assert that the carrier is estopped to charge the actual tariff rate because customers are presumed to know what the applicable tariff is." *Id.* Further, the court explained that the purpose of the doctrine is to prevent discrimination between customers, so Marco could not enforce the contract rates which were different from the filed tariffs. *Id.*

In the instant case, AT & T points out that section 203 of the Act requires filing of tariffs not only as to the rates to be charged, but also with regard to the classifications, regulations, and *practices* affecting such charges. AT & T asserts that CCI's claims pertain to AT & T's business practices in providing telecommunications services, and therefore, inasmuch as CCI's claims against AT & T are based upon the alleged misrepresentations by AT & T regarding its rates, practices, or services, those claims are barred by the filed tariff doctrine. This Court declines to read the word "practices" so broadly. AT

including but not limited to 47 U.S.C. §§ 201, 202.

**2.** *See e.g., Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981) (applying doctrine to natural gas companies); *Louisville & Nashville R.R. v.*

*Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915) (applying doctrine to railroads); *Massaponax Sand & Gravel Corp. v. Virginia Elec. & Power Co.*, 166 Va. 405, 186 S.E. 3 (1936) (applying doctrine to electric companies).

& T has cited no case law in support of such a reading.[3]

Additionally, CCI is quick to point out a major difference between typical filed-tariff cases and the case at bar: CCI is not seeking to enforce the misrepresentations. Unlike the plaintiff in *Marco*, who was attempting to enforce a contract containing rates below the tariff rates, CCI is not seeking to enforce AT & T's alleged misrepresentations. Rather, CCI claims that AT & T made fraudulent representations to CCI's customers regarding the rates that CCI would charge and the dealings between AT & T and CCI. CCI is seeking damages for intentional interference with prospective economic relations and business disparagement resulting from those alleged misrepresentations. Allowing CCI to proceed with its state law claims will not result in discrimination against other AT & T customers in favor of CCI. Therefore, this Court holds that the filed tariff doctrine does not act to bar CCI's state law claims against AT & T.

## V. APPLICATION OF COMMUNICATIONS ACT STATUTE OF LIMITATIONS TO STATE LAW CLAIMS

 Finally, AT & T moves this Court to strike from CCI's complaint all allegations regarding alleged wrongful acts by AT & T that occurred more than two years prior to the filing of the complaint, based on the two-year statute of limitations in the Communications Act, 47 U.S.C. § 415(b). However, this Court has held *supra* that CCI's state law claims do not arise under the Communications Act, but stand alone as separate state law claims. Accordingly, the state law claims are not governed by the statute of limitations contained in the Federal Communications Act.

Based on the foregoing, it is hereby

**ORDERED,** that AT & T's motion to dismiss CCI's state law claims on grounds of preemption is DENIED; it is further

**ORDERED,** that AT & T's motion to dismiss CCI's federal claim and any state law claims not preempted as being barred by the filed tariff doctrine is DENIED; it is further

**ORDERED,** that plaintiff is granted leave to amend and reassert the Seventh Cause of Action within 15 days from the date of this Order; it is further

**ORDERED,** that AT & T's motion to strike allegations regarding acts occurring more than two years prior to the filing of the complaint as being outside of the Communication Act's statute of limitations is DENIED.

---

3. The majority of cases interpreting or applying section 203 pertain to *rates* and not *practices*. See, e.g., *Marco*, 875 F.2d at 436 (holding that accidental or intentional misquotation of rate governed by filed tariff could not alter terms of parties' contract); *MCI Tel. Corp. v. TCI Mail, Inc.,* 772 F.Supp. 64 (D.R.I.1991) (same).