**Charles R. LIPCON, Plaintiff,**

v.

**SPRINT CORP., Defendant.**

**No. 96–3336–CIV–KING.**

United States District Court, S.D. Florida.

April 14, 1997.

Ervin Gonzalez, Miami, FL, for Plaintiff.

Laura Besvinick, Miami, FL, for Defendant.

## *ORDER GRANTING MOTION TO REMAND*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE, arising out of a dispute over the purchase of a long-distance phone calling card, comes before the Court upon a Motion For Remand, filed by Plaintiff, Charles R. Lipcon, on January 10, 1997. De-

1. Defendant asserts that Plaintiff misnamed Defendant and that the correct name is Sprint Communications Co., a limited partnership whose general and limited partners are Kansas and Missouri corporations. (Def.'s Notice of Removal at 1.)

2. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28

fendant, Sprint Corp.[1], filed a Response in opposition on January 28, 1997.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Florida resident, filed a class action Complaint in Dade County Circuit Court on September 19, 1996, and an Amended Complaint, also a class action, on November 1, 1996. The facts alleged are short and simple. Plaintiff states he bought a phone card from Defendant, a company providing interstate telephone services to the public, for $50. The card, delivered to Plaintiff in a sealed envelope, was to be used to place prepaid long-distance phone calls provided by Defendant. Some months after buying the card, Plaintiff tried to use it, but it would not work. Plaintiff called Defendant to inquire and was told that the card had expired. Defendant refused Plaintiff's request to replace the card or refund his money. Plaintiff alleges that, because Defendant never informed him and because Plaintiff had no way of knowing, prior to purchase, that the card contained an expiration date, Defendant deprived him of the full value of his purchase. (An expiration date did appear on back of the card, but it could not be seen until after purchase, Plaintiff states.) He seeks damages based on unjust enrichment (Count I) and imposition (Count II).

On November 20, 1996, Defendant removed the case to federal court, invoking jurisdiction pursuant to 28 U.S.C. §§ 1331[2] and 1337[3], based upon its assertion that Plaintiff's claims are preempted by the Communications Act of 1934 (the "Act"), as amended, 47 U.S.C.A. §§ 151–614 (West 1991 & Supp.1997). Plaintiff then moved for remand, and Defendant responded in opposition.

U.S.C.A. § 1331 (West 1993 & Supp.1997). Defendant has not sought to invoke diversity jurisdiction under 28 U.S.C. § 1332.

3. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]" 28 U.S.C.A. § 1337(a) (West 1993 & Supp.1997).

## II. DISCUSSION

The question presented is whether Plaintiff's claims, however much they look like state-law actions, are really federal claims subsumed by the Act. If so, removal is proper; if not, the Court should remand. Defendant, as the party seeking removal, bears the burden of proving that jurisdiction is proper. *Fowler v. Safeco Insurance Co.*, 915 F.2d 616, 617 (11th Cir.1990).

The preemption doctrine, which derives from the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, dictates that federal law sometimes supersedes state law. A court determines when that occurs by examining Congress' purpose in enacting the particular law at issue. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). In the instant case, the question is whether the Communications Act of 1934 preempts Plaintiff's ostensibly state-law claims of unjust enrichment and imposition. Of the many courts that have faced the issue, albeit under a variety of factual situations, decisions have gone both ways, with some courts finding preemption and others not. Whichever way the cases have gone, however, the path toward decision is well-trodden.

On the one hand is the line of cases tracing back to *Ivy Broadcasting Co. v. American Telephone and Telegraph Co.*, 391 F.2d 486 (2d Cir.1968). In *Ivy*, in which the plaintiff alleged gross negligence in installation, testing and operation of telephone lines, *id.* at 488, the court made several important findings. First, after stating that §§ 206 and 207 of the Act provide that suit may be brought in federal court for specific violations of the Act, the Court found that "the Act does not expressly grant a remedy for negligence or breach of contract in the rendition of communications service. Nor do we think that such a remedy should be 'inferred' from the Act[.]" *Id.* at 489. Thus, 47 U.S.C. § 207 [4] did not provide the basis for subject matter jurisdiction.

Second, the court asked "whether plaintiff's claims are governed by federal common law and, if so, whether the district court has jurisdiction under 28 U.S.C. § 1331." *Id.* at 490. Upon reviewing cases under both the Mann–Elkins Act of 1910, 36 Stat. 539, 544 (which regulated the telecommunications industry before enactment of the Communications Act of 1934), and the Communications Act of 1934, the court answered yes to the first part of the question:

> These cases lead us to conclude that questions concerning the *duties, charges and liabilities* of telegraph or telephone companies with respect to *interstate communications service* are to be governed solely by federal law and that the states are precluded from acting in this area.

*Id.* at 491 (emphases added). Then the Court answered yes to the second part of the question, stating that "a case may 'arise under' federal law, even though the claim is created by state law, if the complaint discloses a need for the interpretation of an act of Congress." *Id.* at 492.

Defendant in the instant case relies heavily on *Ivy*, as have numerous courts, including some in the Eleventh Circuit. For example, in *MCI Telecommunications Corp. v. O'Brien Marketing, Inc.*, 913 F.Supp. 1536 (S.D.Fla.1995), which involved the phone company's suit for unpaid charges, the court quoted *Ivy*'s "duties, charges and liabilities" language in finding that "federal law completely occupies the field of interstate communications, thereby preempting state law." *Id.* at 1540. In *Mellman v. Sprint Communications Co.*, No. 96–CV–119–MMP, slip op. (N.D.Fla. Aug. 30, 1996), which involved plaintiff's challenge to a change in the phone company's long-distance program, the court found that "regardless of how Plaintiff has fashioned his claims, he is seeking relief which will directly implicate the Defendant's tariff, as well as certain provisions of the [Act]." *Id.* at 10. Therefore, "[u]nder the authority of *Ivy*, such claims are 'governed

---

4. "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the [Federal Communications] Commission ... or may bring suit for the recovery of damages for which

such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction[.]" 47 U.S.C.A. § 207 (West 1993 & Supp.1997)

solely by federal law.'" *Id.* (quoting *Ivy*, 391 F.2d at 491).

In *Western Union International, Inc. v. Data Development, Inc.*, 41 F.3d 1494, 1496 (11th Cir.1995), a decision not dependent on *Ivy*, the Eleventh Circuit found jurisdiction proper in federal court based on a line of cases tracing back to *Louisville & Nashville Railroad Co. v. Rice*, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918) and confirmed by *Thurston Motor Lines v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983). Those Supreme Court cases held that,

> [w]ith respect to a railroad's action against a customer for unpaid interstate charges provided in tariffs pursuant to the Interstate Commerce Act, the action arises under federal law because the statute required the "carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment," so that "their duty and obligation grow out of and depend upon the act."

*Western Union*, 41 F.3d at 1496 (quoting *Rice*, 274[247] U.S. at 202 [38 S.Ct. at 429]). The *Western Union* court found the tariff scheme under the Interstate Commerce Act, 49 U.S.C. §§ 10761 & 10762 (repealed 1996) (current version at 49 U.S.C. 13702 (West 1997)), similar in all relevant respects to the tariff scheme of the Communications Act of 1934. Therefore, "the rationale in [*Rice* and *Thurston Motor Lines*] is equally applicable here." *Western Union*, 41 F.3d at 1496.

The *Western Union* court found reinforcement for the holding in *AT & T v. Florida–Texas Freight, Inc.*, 357 F.Supp. 977 (S.D.Fla.), *aff'd*, 485 F.2d 1390 (5th Cir.1973), which held, in an action for unpaid charges for services, that "tariffs validly filed in accordance with 47 U.S.C. § 203 operate to conclusively and exclusively control the rights and liabilities between the parties." *Id.* at 979. Further, "a tariff, required by law to be filed, constitutes the law and is not merely a contract." *Id.*

Decisions going the other way, i.e., finding no federal preemption, do not so much trace back to a single case, but rather rely on a section of the Act, the so-called "saving clause," not addressed in *Ivy*. Section 414 of the Act states, "Nothing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C.A. § 414 (West 1991 & Supp.1997). *Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 98 Ill. Dec. 24, 493 N.E.2d 1045, *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), a class action complaint with facts and arguments quite similar to those in the instant case, provides explication of § 414's effect on state-law-type claims brought against a phone company.

In *Kellerman*, plaintiffs alleged that advertising describing defendant's service charges violated an Illinois consumer fraud statute, and constituted breach of contract and fraud. Defendant, in moving to dismiss, argued that the Act preempted plaintiff's claims. The preemption argument consisted of two prongs: first, that Congress, through the Act, intended to occupy the entire field of long-distance phone service to the exclusion of state law, *id.* 98 Ill.Dec. at 29, 493 N.E.2d at 1050; and second, that plaintiff artfully pleaded state-law theories of liability in order to hide the true, federal, nature of the claims. *Id.*

The Illinois Supreme Court started its analysis with the express purpose of the Act, which is "to make available, so far as possible, to all the people of the United States ... a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges." 47 U.S.C.A. § 151 (West Supp. 1997). The court rejected the idea that "Congress intended to supplant all state regulation of interstate telephone carriers, no matter how unrelated the state regulation is from Congress' objective of creating an interstate telephone network that is rapid, efficient and reasonably priced." *Id.* The saving clause, § 414 of the Act, omitted from discussion in *Ivy*, id. at 441, provides proof. "[S]ection 414, when considered in the context of the entire act, should be construed as preserving State-law causes of action for breaches of duties distinguishable from those created under the Act.'" *Id.* at 442–43 (quot-

ing *Comtronics, Inc. v. Puerto Rico Telephone Co.*, 553 F.2d 701, 708 (1st Cir.1977)).

Thus, whether the Act subsumed the *Kellerman* plaintiffs' claims hinged on the artful pleading argument, which the court, too, rejected:

> The subject matter of plaintiffs' complaints involves neither the quality of defendant's service nor the reasonableness and lawfulness of its rates. Plaintiffs only allege that defendant disseminated fraudulent and deceptive advertisements concerning the cost of its long-distance service. As such, plaintiffs seek to hold defendant to the same standards as they would any other business which advertises on a nationwide basis and which, in the course of its business, is subject to regulation from a number of Federal and State agencies.

*Kellerman*, 98 Ill.Dec. at 30, 493 N.E.2d at 1051.

Other courts have followed *Kellerman* and limited *Ivy's* reach to factually similar cases. For example, in *Cooperative Communications, Inc., v. AT & T Corp.*, 867 F.Supp. 1511 (D.Utah 1994), the court found no preemption by the Act or by federal common law where plaintiff alleged the phone company tried to drive it out of business by discrediting it and interfering with its customers.

> The mere fact that AT & T provides services governed by the Act is alone insufficient to bring all of AT & T's actions within the scope of the Act. CCI's claims do not implicate the standards of uniform and equal service that *Ivy* and its progeny

sought to protect under federal common law.

*Id.* at 1517. To the extent that *Ivy* and other cases deal with "the provision of telecommunications services," *Cooperative Communications*, 867 F.Supp. at 1517, "[c]learly, such matters are governed by the Communications Act." *Id.*

## III. CONCLUSION

This Court agrees with *Kellerman* and *Cooperative Communications* and would restrict *Ivy* and its progeny to cases involving provision of interstate telecommunications service. In determining what constitutes "telecommunications service" the Court may look not only to the Act but also to Defendant's tariffs (which constitute the law regarding Defendant's provision of services, *see AT & T v. Florida–Texas Freight, Inc.*, 357 F.Supp. 977, 979 (S.D.Fla.1973)), filed with the FCC pursuant to § 203. In the instant case, the applicable tariff is Sprint's Tariff No. 1,[5] which states in relevant part, "The expiration date is printed on the card." (Pl.'s Mot. for Remand Ex. A.)

The Court finds that Plaintiff's claims do not implicate the provision of any telecommunications service[6] in that:

> Plaintiff does not question the reasonableness of the Tariff filed with the FCC relating to Defendant's foncards nor the existence of the expiration date on the foncard. This action only questions the Defendant's conduct in failing to disclose the expiration date anywhere other than the back of the foncard and not informing Plaintiff and

---

5. Some confusion arises from the parties' filings. Plaintiff, in his Motion For Remand, asserts that Defendant asserts that the applicable tariffs are the ones that became effective April 1, 1994, and December 5, 1994. (Pl.'s Mot. for Remand at 3.) Defendant's Response in opposition does not address that point. Defendant's Motion To Dismiss (filed prior to the Response to the Motion To Remand) states that the applicable tariff is the one that became effective April 1, 1994. (Def.'s Mot. to Dismiss at 2.) However, Defendant attached as Exhibit A to its Motion To Dismiss tariffs bearing effective dates of April 1, 1994, as well as December 5, 1994. The Court notes that, with respect to phone cards, the substance of the April 1 and December 5 tariffs are the same. (*See* Pl.'s Mot. for Remand Ex. A (offering Sprint's FCC Tariff No. 1 § 4.4.24).)

6. Such an opinion is not contrary to the results in any of the above-cited Eleventh Circuit cases involving unpaid charges for services. *See Western Union International, Inc., v. Data Development, Inc.*, 41 F.3d 1494, 1496 (11th Cir.1995); *MCI Telecommunications Corp. v. O'Brien Marketing, Inc.*, 913 F.Supp. 1536 (S.D.Fla.1995); *AT & T v. Florida–Texas Freight, Inc.*, 357 F.Supp. 977 (S.D.Fla.1973). Nor is it contrary to *Mellman v. Sprint Communications Co.*, No. 96–CV–119–MMP, slip op. at 10 (ND.Fla. Aug. 30, 1996), which the court characterized as "challenging a *rate change* that Defendant made to its tariff and duly submitted to the FCC." (emphasis added)

other consumers of the actual expiration date at the time of purchase.

(Pl.'s Mot. for Remand at 4–5.) Even under *Ivy,* this Court finds no federal claim because it cannot be said that, in the instant case, "the complaint discloses a need for the interpretation of an act of Congress." *Ivy,* 391 F.2d at 492. Rather, as the Illinois Supreme Court states in *Kellerman,* 98 Ill.Dec. at 31, 493 N.E.2d at 1052, "[t]he prosecution of these claims will in no way interfere with the delivery of long-distance telephone service to defendant's customers, and any possible effect the litigation could have on defendant's telephone rates is speculative at best."

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiff's Motion To Remand be and is hereby GRANTED.

It is FURTHER ORDERED and ADJUDGED that all pending motions not ruled upon are DENIED as moot.

DONE and ORDERED.