COOPERATIVE COMMUNICATIONS,
INC., a Utah corporation,
Plaintiff,

v.

AT & T, a Delaware Corporation,
Defendant.

No. 2:94–CV–431K.

United States District Court,
D. Utah,
Central Division.

Jan. 8, 1999.

Scott A. Call, Mr., Thomas R Karrenberg, Mr., John P. Mullen, Mr., Anderson & Karrenberg, Salt Lake City, UT, for Cooperative Communications, Inc., a Utah Corporation, plaintiffs.

Richard M. Hymas, Mr., Nielsen & Senior, Salt Lake City, UT, Richard F. O'Malley, Jr, David A. Goldberg, Sidley & Austin, Chicago, IL, Meric C. Bloch, AT & T Law Department, Basking Ridge, NJ, Edward R. Barillari, Howard Spierer, AT & T Law Dept, Liberty Corner, NJ, James F. Bendernagel, Jr., Sidley & Austin, Washington, DC, for AT & T, a Delaware Corporation, defendants.

MEMORANDUM OPINION & ORDER

KIMBALL, District Judge.

This matter is before the court on defendant's Motion to Exclude Expert Report; defendant's Motion to Deny Prejudgment Interest and defendant's Motion for Partial Summary Judgment. A hearing was held in this matter on December 10, 1998. The plaintiff was represented by Thomas R. Karrenberg and John P. Mullen. The defendant was represented by Richard M. Hymas, James F. Bendernagel, Edward R. Barillari and Howard Spierer. Oral argument was heard and the matter was taken under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised, the court enters the following memorandum and order.

## I. FACTUAL BACKGROUND

The plaintiff, Cooperative Communications Inc., ("CCI") was incorporated by Edwin B. HerrNeckar and Anne Smith HerrNeckar in 1989 as an "aggregator" of long distance telephone services. An aggregator is a company which contracts to buy large quantities of long distance telephone service from another long distance carrier, in this case the defendant, AT & T, pursuant to a volume discount plan and then resells the service, usually for a negotiated fee, to other subscribers, known as "end-users." This arrangement enables the customers, or end-users of the aggregator to purchase, through the aggregator, AT & T long distance services at a lower price than they would have been able to obtain from AT & T directly.

At the time that CCI was established, Mr. HerrNeckar was an employee of AT & T in the Salt Lake City office. CCI alleges that shortly after it commenced operation, AT & T fired Mr. HerrNeckar and began an attempt to drive CCI out of business. CCI alleges that the Salt Lake City branch office engaged in wrongful acts as part of a systematic campaign aimed at discrediting CCI and interfering with CCI's end-users. CCI alleges that AT & T made intentional misrepresentations to its end-users regarding CCI's ability to provide services and that it misappropriated confidential client information and used that information in an attempt to destroy CCI's customer base.

Specifically, CCI brings eight causes of action against AT & T. They are: (1) intentional interference with prospective economic relations; (2) interference with contract; (3) business disparagement; (4) breach of the covenant of good faith and fair dealing; (5) unfair competition; (6) violation of the Utah Uniform Trade Secrets Act, Utah Code Ann. §§ 13–24–1 to –9 (1992); (7) violation of the Federal Communications Act and (8) Violation of the Lanham Act.

CCI alleges that AT & T's actions resulted in damages in excess of $9,000,000.00. In order to support its damage claim, CCI relies on a damage report prepared by Merrill R. Norman of Norman/Loebbecke Associates ("NLA Report"). The NLA Report has gone through three revisions. The first report is dated June 28, 1996 and calculates damages to be at least $2,964,532.00. The second report is dated June 17, 1997 and calculates damages to be at least $4,565,140.00. The third report and the one now being relied upon by CCI, is dated October 9, 1997 and calculates damages to be at least $9,761,-951.00. AT & T argues that the NLA Report is inadmissable as is the testimony of Mr. Norman. AT & T further argues that this court should deny CCI prejudgment interest and lastly that partial summary judgment should be granted in AT & T's favor on CCI's state law claims on the basis of the filed tariff doctrine and the Supreme Court's ruling in *AT & T v. Central Office Telephone, Inc.,* 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998).

## II. DISCUSSION

### A. *Admissibility of NLA Report*

The admissibility of expert testimony is based primarily on Rule 702 of the Federal Rules of Evidence which states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

AT & T argues that this court should look to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) which holds that the court should act as a "gatekeeper" in assessing whether expert testimony is sufficiently reliable to be presented to a jury. CCI argues that *Daubert* only addresses the admissibility of expert opinion based on *scientific* evidence, and not expert opinion based on "technical, or other specialized knowledge." *Daubert* at 590 n. 8, 113 S.Ct. 2786. Therefore, according to plaintiff, *Daubert* is not applicable to the simple accounting analysis in the NLA Report in that it is not based upon a scientific theory, but rather simply calculates lost time for sales people and equates that to lost sales. Rule 702 only requires that the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, and that the expert himself be qualified by knowledge, skill, experience, training or education.

In *Compton v. Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir.1996), the Tenth Circuit held that the factors outlined by the Court in *Daubert* are "applicable only when a proffered expert relies on some principle or methodology. In other words, application of the *Daubert* factors is unwarranted in cases where expert testimony is based solely upon experience or training." *Id.* at 1518 (*citations omitted*). The expert testimony in the case at hand is not based on scientific principle or methodology, but on experience and training. As the *Compton* court noted, "we do not believe *Daubert* completely changes our traditional analysis under Rule 702." *Id.* This court would agree with the defendant that the three NLA Reports have significant problems and are somewhat conjectural in part. However, these problems go to weight and credibility and under Rule 702 the NLA Reports and Mr. Norman's testimony is admissible.

■ CCI's Second Amended Complaint also seeks prejudgment interest on the damages it claims it is entitled to recover under its first, second, sixth and eighth claims for relief. AT & T argues that even if CCI were entitled to damages in this case, it is not entitled to recover prejudgment interest. This court agrees. Prejudgment interest is only available in cases where the amount of loss is fixed "with mathematical accuracy." *Price–Orem Investment Co. v. Rollins, Brown & Gunnell, Inc.*, 784 P.2d 475, 483 (Utah Ct.App.1989). The damages in this case are not fixed with mathematical accuracy or certainty, are unliquidated and, therefore, CCI is not entitled to prejudgment interest.

### B. *AT & T's Motion for Partial Summary Judgment*

#### 1. *Standard of Review*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 322, 106 S.Ct. 2548.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.) *cert denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). Finally all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D. Utah R. 202(b)(4).

#### 2. *Filed Tariff Doctrine*

AT & T argues that CCI's state law contract and tort claims are barred under the filed tariff doctrine. The filed tariff doctrine derives from Section 203 of the Communications Act. AT & T is a common carrier, and as a common carrier it is subject to the requirements of Title II of the Communications Act. 47 U.S.C. §§ 201 *et seq.* Under Section 201, AT & T has a duty to provide communications service to any person "upon reasonable request," and such services must be provided pursuant to "charges, practices, classifications, and regulations" that are "just and reasonable." 47 U.S.C. §§ 201(a) and (b). Under Section 202, AT & T is prohibit-

ed from engaging in "any unjust or unreasonable discrimination" with respect to its "charges, practices, classifications, regulations, facilities, or services." 47 U.S.C. § 202(a).

These duties to provide telecommunications services on terms that are just, reasonable and nondiscriminatory are policed through tariffs. AT & T is required to file these tariffs under Section 203 of the Communications Act. These tariffs set forth all rates, practices, classifications and regulations. Once the tariffs have become effective the common carrier is precluded by law from deviating from the terms of its filed tariffs. As described by the Supreme Court in *American Telephone and Telegraph Co. v. Central Office Telephone Inc.*, 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998), these tariffs are modeled after the provisions in the Interstate Commerce Act and work in the same manner. The Supreme Court described the filed-rate doctrine under the ICA as follows:

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which had been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.* at 1962 *citing Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915). What this means is that even if the "carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff." *Id.* The customer is presumed to know the rates in the published tariff.

In 1994 AT & T filed a Motion to Dismiss in this court. In an opinion written by Judge J. Thomas Greene, AT & T's motion was denied. AT & T argued, as it does now, that the filed tariff doctrine applies to practices as well as rates and that CCI's claims pertain to AT & T's business practices in providing telecommunications services. Judge Greene ruled that "[t]his Court declines to read the word 'practices' so broadly." *Cooperative Communications, Inc. v. AT & T Corp.*, 867 F.Supp. 1511 (D.Utah 1994). Judge Greene further held that the filed tariff doctrine did not apply in this situation because CCI was not seeking to enforce misrepresentations made by AT & T, rather, "CCI claims that AT & T made fraudulent representations to CCI's customers regarding the rates that CCI would charge and the dealings between AT & T and CCI." *Id.* at 1519.

AT & T has renewed its argument under the filed tariff doctrine based upon the Supreme Court opinion in *American Telephone and Telegraph Company v. Central Office Telephone Inc.*, 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) ("COT") which according to AT & T extends the filed tariff doctrine to practices as well as rates which holding overrules Judge Greene's opinion. This court disagrees with AT & T's interpretation of COT and believes that Judge Greene's opinion is still an accurate statement of the law.

The major distinction between the case at hand and *Central Office Telephone* ("COT") is that COT was attempting to enforce side agreements with AT & T for "faster provisioning" and "allocation of charges" different than the specific provisions governing those items in the tariff. The Supreme Court held that enforcement of such proposed side agreements would violate the filed tariff doctrine. Even though COT did not involve rates or rate setting it did involve services which were directly related to rates. The Court held that:

> Rates, however, do not exist in isolation. They have meaning only when one knows the services to which they are attached. Any claim for excessive rates can be couched as a claim for inadequate services and vice versa. "If 'discrimination in charges' does not include non-price features, then the carrier could defeat the broad purpose of the statute by the simple

expedient of providing an additional benefit at no additional charge...."

*Id.* at 1963 *(citation omitted)*. Although COT does make it clear that the filed tariff doctrine applies to practices as they relate to provisioning and billing, the Supreme Court does not define "practices" as broadly as AT & T would like. In his concurrence Chief Justice Rehnquist stated that:

> The tariff does not govern, however, the entirety of the relationship between the common carrier and its customers. For example, it does not affect whatever duties state law might impose on petitioner to refrain from intentionally interfering with respondent's relationships with its customers by means other than failing to honor unenforceable side agreements, or to refrain from engaging in slander or libel, or to satisfy other contractual obligations. The filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff. It does not serve as a shield against all actions based in state law.

*Id.* at 1966–67 (Rehnquist J. *concurring* ).

 Expanding the filed tariff doctrine to include the conduct alleged by CCI would result in almost complete immunity to common carriers. Further, as Judge Greene stated, CCI is not attempting to enforce misrepresentations made by AT & T, but rather is seeking damages for interference with prospective economic relations based upon AT & T's fraudulent representations to CCI's customers. This is not the sort of conduct that the filed tariff doctrine was intended to cover. Further, it is important to note that there are genuine issues of material fact regarding the exact type of conduct that AT & T engaged in. Therefore, for the reasons stated above it is hereby

ORDERED that Defendant's Motion to Exclude the Expert Report is DENIED. Defendant's Motion to Deny Prejudgment Interest is GRANTED and Defendant's Motion for Partial Summary Judgment is DENIED.